AGNOLI ET UX. *v.* POWERS ET UX., ASSIGNEES

[No. 272, September Term, 1963.]

*Decided June 16, 1964.*

*Motion for rehearing filed June 26, 1964, denied July 30, 1964.*

The cause originally was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ., and reargued before the entire Court.

*Leonard S. Jacobson* (on both arguments), with whom was. *Preston A. Pario* on the brief, for the appellants.

*Harry S. Shapiro* (on both arguments) for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order passed by Judge Cullen on March 18, 1963, dismissing the petition of the appellants to enjoin mortgage foreclosure proceedings instituted by the appellees as assignees of a second mortgage from the Agnolis to Richmond Construction Company, Inc. (Richmond).

On May 12, 1956, the appellants entered into a written agreement with Richmond for the purchase of a new home to be erected upon a designated lot of ground at 5711 Benton Heights Avenue and to be similar in design to a sample house already erected on that street. Earl W. Powers signed the contract as vice-president on behalf of Richmond. The purchase price was to be $17,300, and the Agnolis agreed to execute a $4,000 second mortgage on their home at 4020 Granite Avenue, in lieu of a down payment. The mortgage was executed on July 16, 1956; on August 1, 1956, it was assigned to the appellees; it was recorded among the land records on October 15, 1956. An assignment was thereafter made to William M. Travers but the mortgage was ultimately reassigned to the Powers on August 2, 1961. Powers testified he paid Richmond $4,000 in cash for the initial assignment of the mortgage, and that the money was deposited in Richmond's account. He testified that he was one of three persons having an interest in Richmond, but he only handled sales. The record is not clear as to just when work on the new house began, but Agnoli testified it was "quite a while" after they executed the mortgage.

As the work progressed, Agnoli and his wife inspected it, and found fault with some items, such as the color of bath tile, the formica in the kitchen, and the corner windows. On September 25, 1956, through their lawyer, they notified Richmond that they were rescinding the contract because the new house was not constructed in accordance with the sample house, and demanded a release of the mortgage on their home. Richmond ignored the letter, and on April 26, 1957, sold the property to Henry and Helen Santoni for $18,800. Agnoli testified that this was some three months after the settlement date fixed by the Agnoli contract. Shortly thereafter Richmond went out of business and its charter was forfeited. Powers meanwhile had assigned the mortgage to Travers, as security for a loan, but later obtained a reassignment. Powers instituted foreclosure proceedings on October 10, 1961, and a decree for sale was passed on the same day.

The Agnolis took no steps to recover their second mortgage following their letter of September 25, 1956, until March 22, 1960, when they brought a bill in equity against the Powers and Travers to have the mortgage declared null and void on the ground of fraud. A demurrer to the bill was sustained on August 2, 1960, with leave to amend within fifteen days, but no amendment was made. Rule 320 d 5 indicates that in such circumstances the leave to amend was abandoned, but no order dismissing the bill was passed until several years later, and that order was rescinded pending the decision of this Court in the instant case. The record of proceedings in the former case was offered in evidence in the instant case as the basis for a claim of res judicata. However, the chancellor in the instant case took the position that the "legality" of the mortgage was in issue here, and found that it was legal, despite the contention of the appellants that Powers knew that Richmond had agreed to the rescission of the Agnoli contract by reselling the property at a profit, and that Powers was obligated to return the mortgage and look to Richmond for reimbursement of his advances.

In the view we take of the case, we do not reach these questions, for we think the appeal must be dismissed upon another ground. The docket entries clearly show that the order for ap-

peal in the instant case was filed on April 16, 1963, but no transcript was transmitted to this Court within thirty days from that date, nor was the time extended during that period. Rule 825 a prescribes the thirty day period and Rule 825 b authorizes the lower court to extend the time for not more than ninety days from the date of the order for appeal, "if its order is made before the expiration of the period for transmitting the record as originally prescribed or as extended by a previous order; * * *." This clause was added by amendment on May 10, 1963, effective May 15, 1963, and made applicable so far as practicable to all pending proceedings. A committee note states that the amendment was "intended to make it clear that the lower court may only extend if the order is signed before the expiration of the original thirty-day period, or within the period as extended by a previous extension order." But on June 12, 1963, the appellants obtained an order from Judge Cullen extending the time for transmitting the record to this Court for "ninety days from April 18, 1963, being the date of the appeal entered." We hold, as required by Rule 825, that he was without authority to pass that order.

On July 16, 1963, this Court passed an order, on motion by the appellants, to extend time for transmitting the record until October 16, 1963. The record was received on October 16, 1963. The fact that the extension of time by the lower court had been made after the expiration of the time allowed was not brought to our attention at that time. Rule 825 c authorizes this Court to extend the time for transmitting the record, but it provides: "Such an order will not be entered after the time for transmitting the record has expired unless it be shown that the failure to transmit the record was occasioned by the neglect, omission or inability of the clerk of the lower court, the court stenographer or appellee." Cf. subsection d. There was no such showing, and we hold that we had no power to extend the time under the circumstances.

On November 7, 1963, the appellees filed a motion to dismiss the appeal, calling attention for the first time to the failure to transmit or obtain an extension within thirty days from the entry of the appeal. The appellants filed an answer objecting that the motion was not in order because not filed within

ten days from the date the record was filed in this Court, as required by Rule 835 b (4) and 836 c. But 836 c concludes with the sentence: "This section shall not apply if the motion to dismiss is included in the appellee's brief pursuant to section d of this Rule." Section d provides: "A motion to dismiss may be included in the appellee's brief."

On December 3, 1963, we denied the motion to dismiss the appeal without comment. The ground was obviously that the motion was not timely filed, and, in effect, we granted a motion *ne recipiatur,* and did not consider the merits of the motion to dismiss. The appellees included another motion to dismiss in their brief. We think their right to do so was not foreclosed by our prior ruling. The purpose of the time limitation in Rule 836 c is to enable a party to obtain a ruling on his motion to dismiss prior to the printing of his brief. *Cf.* subsection e and Rule 837. As we pointed out in *Bornstein v. State Tax Commission,* 227 Md. 331, 335, an appellee has an option and is not bound by the ten-day limitation if he incorporates the motion in his brief.

> *Appeal dismissed, costs to be paid*
> *by the appellants.*

HORNEY, J., filed the following dissenting opinion, in which SYBERT, J., concurred.

We agree that Maryland Rule 825 a limits the time for transmitting the record to this Court unless a different time is fixed pursuant to section b and c and that this Court may dismiss an appeal under Rule 835 b (4) if the record is not transmitted within the time prescribed. But we do not agree as to the effect of Rule 836 regulating the filing of a motion to dismiss an appeal under 835 b. While a motion may be filed either within ten days from the date the record is filed with this Court pursuant to 836 c *or* the motion may be included in the appellees' brief pursuant to Rule 836 d, the rule clearly does not authorize an appellee who files a motion under section c, which is denied because it was not filed seasonably, to renew the motion by including it in his brief. The method the appellee may use is optional, *Bornstein v. State Tax Commission,*

227 Md. 331, 176 A. 2d 859 (1962), which means he may choose one or the other, but he may not use both. Under the circumstances in this case, the appeal should have been decided on its merits.

Judge Sybert joins me in dissenting.