## STATE OF MARYLAND *v.* SHERIDAN

[No. 654, September Term, 1966.]

*Decided December 13, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*S. Leonard Rottman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *William A. Linthicum, Jr., State's Attorney for Montgomery County,* on the brief, for appellant.

*Herbert J. Miller, Jr.,* with whom were *James T. Wharton* and *Howard Monderer* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Walter J. Sheridan, a special correspondent and investigative reporter for a national broadcasting network, was subpoenaed to testify before the Montgomery County Grand Jury on November 28, 1966, in connection with suspected irregularities or unlawfulness in administrative zoning decisions which he had investigated. He refused to tell the Grand Jury the details of a conversation between him and one Patrick, although at least the substance of the information he had gleaned in the conversation seemingly had been disseminated to the world and although he freely told the jury that Patrick had been the source of his information. Obligingly, the Grand Jury recessed in order to afford Sheridan time and opportunity to consult a lawyer. When the jury reconvened, Sheridan again refused to divulge the contents of his conversation with Patrick. Thereupon, the jury authorized the State's Attorney to seek to require the recalcitrant to testify before them as requested. Hearing was had before Judge Moorman on the State's Attorney's petition and Sheridan's answer (which invoked Code (1965 Repl. Vol.), Art. 35, § 2, providing as follows:

> "No person engaged in, connected with or employed on a newspaper or journal or for any radio or television station shall be compelled to disclose, in any legal proceeding or trial or before any committee of the legislature or elsewhere, the source of any news or information procured or obtained by him for and published in the newspaper or disseminated by the radio or television station on and in which he is engaged, connected with or employed,")

as well as the transcript of Sheridan's testimony before the Grand Jury.

Although Judge Moorman found as a fact, entirely justifiably we think, that Sheridan "obtained certain information in the form of a conversation with Mr. Patrick * * * [and] that

he divulged the source of the conversation to the Grand Jury," he sustained Sheridan's claim that his "newspaperman's privilege" of never violating a confidence allowed him to remain silent as to the details of the information Patrick had given him, and dismissed the petition, somewhat inexplicably to us, since the statute makes inviolate only "the source of any news or information" and not the "news or information" itself.[1]

The State appealed in December 1966 and, after an extension of time, the record was filed in this Court in late January 1967. On July 7 next a motion to dismiss the appeal as moot was filed, because the term of the Grand Jury before whom Sheridan was sought to be required to testify had ended. We dismissed the motion under Maryland Rule 836 c because it had not been filed within ten days after the case had become moot (Rule 835 b 7).

Sheridan renewed the motion to dismiss in his brief as Rule 836 c and the decision in *Agnoli v. Powers,* 235 Md. 289, 293-94, allow him to do.

We think the appeal must be dismissed as moot. The State's petition sought to have Sheridan compelled to give further testimony to the Grand Jury to which he had already given the source of his information. That Grand Jury's term has ended and it has been discharged. We could do nothing to undo or correct what has taken place and if we approved the lower court's action it would be an appeal *in vacuo.* In *Ex parte Maulsby,* 13 Md. 625, a prisoner who had been jailed for refusing to answer questions before a grand jury was ordered

---

1. Maryland in 1896 was the first State to pass a statute changing the common law to give a newspaperman the privilege of not revealing the source of information published by him. Some twelve other States now have similar statutes. The cases on the scope and meaning of such statutes are few, and those there are generally have turned on whether the news or information must be given if it would reveal its source. See, for example, In re Taylor (Pa.), 193 A. 2d 181, where the Court went out of its way to hold that the news or information could not be required to be divulged. The decision is analyzed in 77 Harv. L. Rev. 556 and 112 U. Pa. L. Rev. 438, and found to have failed to discriminate on the facts and the law between the *source* of the information and the *information.* Cf. New Jersey v. Donovan (N. J.), 30 A. 2d 421.

released by this Court because the jury had been discharged. The *Maulsby* holding was applied by the Supreme Court in *Shillitani v. United States*, 384 U. S. 364, 371, 16 L. Ed. 2d 622, 627, which said: "Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt."

In the leading case of *Loubriel v. United States* (2nd Cir.), 9 F. 2d 807, 809, Judge Learned Hand said for the Court:

> "Nor does it make any difference that the order of committal gave him leave to purge himself before another grand jury. Each investigation is separate and independent; it terminates with the grand jury which undertakes it, and the next does not take it up as unfinished business. The order, if it could be construed as a direction to testify before another grand jury, would have been void. * * *
>
> "* * * But the subpeona did not require his attendance before any other than the September grand jury. When that body adjourned, Loubriel was under no further duty to testify, and could, of course, be no longer compelled to discharge a duty which had ended."

See also *Appeal of McClintock Mercantile Co.* (7th Cir.), 360 F. 2d 917, and *Graziadei v. United States* (7th Cir.), 319 F. 2d 913.

This Court consistently has held that where a case on appeal has become moot it will be dismissed save in the most extraordinary circumstances requiring a decision in the public interest. Convenience and expediency of themselves will not justify the decision of an abstract question. *Lloyd v. Supervisors of Elections*, 206 Md. 36, 43; *Washburne v. Hoffman*, 242 Md. 519. In *Lloyd,* we said:

> "The courts of other jurisdictions, which recognize the exception, have found difficulty in drawing the line which separates the exception from the general rule of dismissal. Those which we regard as the better

considered and reasoned cases take the view that only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions. They hold that if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight."

The case before us seems to have been the only case involving the newspaperman's statute that has come to this Court since the statute was passed in 1896 and it appears to us to turn on the relatively narrow question of waiver of the privilege. Under all the circumstances we say, as we did in *Lloyd* (p. 43) : "we find here none of the imperative and manifest requirements necessary if the Court is to give an opinion when the matter is moot as to the parties before the Court."

*Appeal dismissed, costs to be paid by the appellant.*