Burke, J.
Appellants are faculty members of the State University of New York at Stony Brook, in Suffolk County. They have been subpoenaed and requested to appear before the 1968 Suffolk County Grand Jury, which was impaneled solely for the purpose .of investigating possible drug abuses on the university campus. The District Attorney, acknowledging that appellants are targets of that inquiry, caused the subpoenas to be issued so that he could—according to appellants — proffer the following questions:
1. Have you ever used illegal drugs with students?
2. Have you ever advocated to students the use .of illegal drugs?
3. Have you ever discussed with an administrator your advocacy of illegal drugs or your use of drugs with students ?
Upon receipt of the subpoenas and after learning of the purpose and scope of the contemplated inquiry, the appellants commenced the present action to quash these subpoenas. Their application was denied and that denial was affirmed by the Appellate Division. The constitutional question raised by petitioners permitted an appeal as of right to this court.
Before proceeding with the merits of this litigation, it should be noted that the denial of an application to quash a subpoena, *139 instituted in the County Court, is a final and appealable order. (Matter of Inter-City Assoc. [People], 308 N. Y. 1044; Matter of Ryan [Hogan], 306 N. Y. 11, 17.)
Appellants contend that prospective defendants or targets of a Grand Jury investigation may not be compelled to attend a Grand Jury hearing. This proposition is implicit, we are told, in the recent decisions of both this court and the United States Supreme Court. Specific reference is made to our decisions in People v. Steuding (6 N Y 2d 214) and People v. Laino (10 N Y 2d 161). We begin therefore by discussing those decisions.
In People v. Steuding .(6 N Y 2d 214, supra), an employee of a company involved in the sale of road oils to various Highway Superintendents in Ulster County was deemed, for purposes of that appeal, to be a prospective defendant or target of a Grand Jury investigation of corruption of that county’s public officers. The witness appeared and testified, without invoking his privilege against self incrimination, then contained in section 2447 of the former Penal Law. The majority of this court there concluded that “ a prospective defendant * * * may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert that privilege.” (6 N Y 2d, pp. 216-217, supra; emphasis added.)
People v. Laino (10 N Y 2d 161, supra) was merely a logical extension of Steuding. In Laino, the defendant was a target of a Grand Jury inquiry concerning violations of the State Tax Law. The defendant and his books were subpoenaed before that body where he unequivocally demanded complete immunity prior to answering any questions. Upon receiving that immunity, he testified freely. Subsequently, that testimony was used as the foundation of an unrelated prosecution for income tax evasion. In setting aside that conviction, this court stated: “In such a case the subpoena is deemed to be a form of compulsion, and the testimony thus compelled may not be used against the defendant as a basis of an indictment, or any other purpose ” (10 N Y 2d, pp. 170-171, supra). Both of these decisions are clear in their requirement that the defendant or target be both called and examined in order to receive immunity from self incrimination. They are, therefore, inapplicable to the case before us.
*140 The question then arises whether we must go beyond the prior decisions of this court and adopt the rule, proposed by appellants, that subpoenas issued to prospective defendants be quashed prior to an appearance before the investigating body. The Supreme Court has recently (had occasion to comment upon the breadth of the privilege against self incrimination which accompanies a prospective defendant when he testifies before a Grand Jury. (Gardner v. Broderick, 392 U. S. 273; Sanitation Men v. Sanitation Comr., 392 U. S. 280.) While the Supreme Court did not deal specifically with the problem posed by the present appeal—as the subsequent discussion will make clear —■ nevertheless, it is an essential underpinning of these decisions that a public employee who is a target of an investigation may be subpoenaed by a Grand Jury and the issuance of that subpoena does not of itself constitute a violation of the employee’s Fifth Amendment rights.
The appellant in Gardner was requested by a Grand Jury investigating alleged bribery and corruption of police officers to waive his privilege against self incrimination at the time of his examination. When he refused to sign the waiver, he was discharged. The court held that this discharge could not stand. (392 U. S. 273, supra.) This rationale was carried over to the companion decision in the Sanitation Men’s case, wherein the court concluded that public employees, like all other persons, are entitled to the benefit of the constitutional protection against self incrimination and, when called before a Grand Jury, may not be faced with the Hobson’s choice of surrendering their constitutional rights or their jobs. (392 U. S., p. 280, supra.) In light of the above, we conclude that the Fifth Amendment does not extend to the present situation. On the contrary, there is no discernible reason for holding that a prospective defendant or target may not be compelled to at least attend a Grand Jury investigation.
The additional argument is advanced that appellants should not be made to respond to the subpoena because they are teachers and thus are entitled to protection from such inquiry under the First Amendment. We are specifically referred to the Supreme Court decisions in Keyishian v. Board of Regents (385 U. S. 589) and Domhrowski v. Pfister (380 U. S. 479). In Pfister, each of the appellants had been indicted for violating *141 section 364(7) of the Louisiana Subversive Activities and Communist Control Law by failing to register as members of a Communist-front organization. Certain appellants were also individually indicted for violating other provisions of that law. However, no prosecutions had been secured and, indeed, no prosecutions had even been commenced. The argument was, therefore, advanced that the appellants ’ constitutional' rights were not adequately protected despite the possibility of vindication in the anticipated- prosecution. (380 U. S., p. 485.)
1 ‘ [A] substantial loss or impairment of freedoms of expression will occur if appellants must await the state court’s disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury.” (380 U. S., p. 486.) In accepting the argument and reviewing the statute prior to any prosecution, the Supreme Court held that the statute was sufficiently dangerous to the First Amendment rights of the appellants to warrant a review of its constitutionality without first subjecting the appellants to a prosecution under the act. Otherwise, the court concluded, the act would interfere with freedom of expression and association.
Keyishian is distinct from Pfister in that the appellants in Keyishian either had their employment terminated or at least threatened by their refusal to comply with requirements imposed by the State University Trustees that (1) each faculty member certify that he was not a Communist and, if he had ever been one that he so advise the university president, and (2) that non-faculty members state under oath whether they had advocated or been a member of a group that had advocated the forceful overthrow of the Government. While not all of the appellants in Keyishian faced sanction, it was quite apparent that certain of their number had in fact been punished for violating the statutory provisions summarized above. In holding these statutes unconstitutional, the Supreme Court repeatedly cautioned against laws which infringe upon First Amendment rights. “ The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform teachers what is being proscribed.” (385 U. S., p. 604.)
These two cases, it is contended, irrefutably establish that the proposed questions concerning advocacy must be stricken as *142 they violate appellants ’ First Amendment right of academic freedom. We disagree.
In Keyishian and Pfister, the Supreme Court reviewed State laws which, as I indicated, were in both instances found to be unconstitutional. The passages from those cases and their precursors which stress the necessity for a “ free play of spirit ” guaranteed by the First Amendment illustrate the necessity for entertaining those declaratory judgment suits. Otherwise, the appellants would either have been intimidated in their conduct or risked punishment by continuing to ignore the contested laws. We have no statutes attempting to proscribe conduct in this case. Bather, the specious argument made here is that teachers will be intimidated in their lectures merely because of the potential threat of being compelled to appear before a Grand Jury inquiry. If this allegation is true, the intimidation is attributable to something other than a violation of constitutional rights. Keyishian and Pfister are clearly inapplicable.
The appellants may of course both advocate the use of drugs and discuss advocacy with an administrator. Moreover, were statutes enacted attempting to curtail these rights, such statutes would be unconstitutional. Nevertheless, no constitutional right is violated by a subpoena which requests a teacher to appear before a Grand Jury inquiry and discuss matters — relevant to an investigation of misconduct— which he may freely discuss in a classroom.
The order appealed from should be affirmed, without costs.

. We need only note here that mere discussion or advocacy (in the abstract) of conduct which might itself be criminal, as distinguished from the .actual solicitation of crime with the specific intent of having it committed (Penal Law, § 100.00-§ 100.10), may not constitutionally be prohibited. (See Keyishian v. Board of Regents, 385 U. S. 589, 599-601; Yates V. United States, 354 U. S. 298, 318-327; People v. Epton, 19 N Y 2d 496, 506.)