Charles Bruce NABORS *v.* STATE of Arkansas

CR 77-236                                  565 S.W. 2d 598

Opinion delivered May 8, 1978
(Division I)
[Rehearing denied June 12, 1978.]

*Russell Reinmiller,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joyce Williams Warren,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The jury sentenced the appellant to 17 months' imprisonment upon a charge of theft of property. Three points for reversal are argued.

First, the appellant, in the course of being apprehended by police officers a few hours after the burglary out of which the charge arose, suffered two shotgun wounds. One of the shots was apparently fired by Officer Keith Rounsavall. Before the trial the defense sought a subpoena duces tecum for the production by the police department of Officer Rounsavall's personnel records. The defendant's theory was that the personnel records might supply a basis for cross-examination with respect to the officer's credibility, the suggestion being that the officer's "past shooting record" might be useful to the cross-examiner. The abstract contains no allegation that the officer in fact had a past shooting record.

The court was right in denying the application for a subpoena duces tecum. The point was discussed in detail in a similar New York case, where there was also an application for a subpoena duces tecum for the production of the personnel records of police officers. *People* v. *Coleman*, 75 Misc. 2d 1090, 349 N.Y.S. 2d 298 (1973). The court pointed out, with supporting citations, that such a subpoena may not be used for the purpose of discovery or to ascertain the existence of evidence. Rather, the purpose of the subpoena is to require the production of documents and other items that may assist in the development of testimony. As the court there said: "Where it is apparent that a party does not intend or cannot hope to offer testimony which refers to the items subpoenaed but merely seeks discovery and inspection, his application should be denied." We agree with that view.

Second, the prosecution's theory was that the burglary (of Kraftco hardware store) was committed by four persons, three of whom were inside the store and the fourth outside in a car as a lookout. The State's proof tended to show that the four men kept in touch with one another, during the progress of the burglary, by means of a CB walkie-talkie inside the store and a CB radio in the car somewhere in the neighborhood. Over the appellant's objection a police officer was permitted to testify that he had been in the immediate vicinity of the burglary, that he had listened on his police car radio to the burglars' conversation, and that they had made certain statements which he quoted and which indicated that the appellant was one of the men inside the store.

The appellant argues that the officer's narration of the burglars' purported conversation was inadmissible hearsay, because he could not identify the voices of any of the speakers. It is settled, however, that the authentication of a speaker's voice may be shown by circumstantial evidence, such as the situation in which a communication received by telephone "reveals that the speaker had knowledge of facts that only X would be likely to know." McCormick on Evidence, § 226 (1972). The Uniform Rules of Evidence give several similar examples of the circumstantial identification of voices. Ark. Stat. Ann. § 28-1001, Rule 901 (b) (6) (Supp. 1977).

Here there was an abundance of circumstantial evidence to support the trial judge's decision to admit the testimony about the burglars' conversation. Several police units cooperated in following the course of the burglary as it occurred, although they evidently did not know exactly where it was taking place. The appellant had been seen shortly before the burglary, leaving a residence in a particular car in company with three or four other men. That car was followed by a police unit to a point within a few blocks from Kraftco. There the police temporarily lost contact with it, and all the occupants except the driver left the vehicle. The car had a CB radio. After the burglary the car was again spotted by the police. A high-speed chase followed, the result of which is not shown by the evidence.

The appellant, according to the State's theory, did not leave the scene of the burglary in the car identified by the police. Instead, he and another man drove away in a Kraftco truck filled with stolen merchandise. It was their intention, according to the monitored conversation, to meet the other two "at the spot." That plan was evidently thwarted by the officers' pursuit of the other car. After a few hours the appellant and his companion went back to the residence where the appellant had first been observed, parked the Kraftco truck nearby, and walked up to the residence. There the waiting police officers confronted them. When the two suspects tried to flee, the appellant was shot twice and fell to the ground. The key to the Kraftco truck was found underneath him. A CB walkie-talkie was found in the yard nearby. The radio was set on Channel 12, which was the channel used by the suspected burglars in their conversation. We need not narrate the State's proof in greater detail to show that the trial judge was fully warranted in finding from the circumstances that the monitored conversations were sufficiently authenticated to be admissible. Needless to say, their ultimate weight was a matter to be determined by the jury.

We have considered the appellant's third contention for reversal, but do not find it of sufficient merit to warrant discussion.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.