# THE RANDALL BOOK CORPORATION *v.* STATE OF MARYLAND

[Nos. 1395 and 1664, September Term, 1980.]

\* \* \*

# FRANK BILLITZ, DIRECTOR-TRUSTEE FOR ECON-O-PAK *v.* STATE OF MARYLAND

[Nos. 1396 and 1665, September Term, 1980.]

*Decided June 5, 1981.*

132

The cause was argued before THOMPSON, MOYLAN and MOORE, JJ.

*Jack A. Bernstein,* with whom was *David S. Goldberg* on the brief, for appellants.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General of Maryland, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *David F. Mister, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

This case involves four separate appeals from orders of the Circuit Court for Baltimore County, which we consolidated and advanced for argument. In numbers 1395 and 1396, The Randall Book Corporation and Frank Billitz, Director-Trustee for Econ-O-Pak, Inc., the appellants, appeal from orders by the Circuit Court to comply with certain summonses, which had been issued by the State's Attorney for Baltimore County as part of an investigation into the suspected sale and distribution of pornographic materials. In numbers 1664 and 1665, the appellants appeal from orders holding them in contempt for failing to comply with the earlier orders. Inasmuch as the state has accepted the appellants' statement of the facts, we will also adopt that statement, with minor editing.

On September 10, 1980, appellant The Randall Book Corporation was served with a summons in aid of a criminal information issued by the State's Attorney for Baltimore County and returnable thereto, requiring its custodian of

records to produce on September 15, 1980, at the State's Attorney's office, all cancelled checks of The Randall Book Corporation from January 1, 1980, to present, any and all ledgers, accounts, or other financial records showing cash receipts and disbursements of The Randall Book Corporation from January 1, 1980 to the present, and any and all records showing vendor's licenses applied for by, issued to, or held by The Randall Book Corporation from January 1, 1980, to the present. Similar summonses were issued by the State's Attorney for Baltimore County on April 3, 1980 and May 13, 1980. Appellant Frank Billitz, Director-Trustee of Econ-O-Pak, Inc., was served on September 11, 1980, with a similar summons requiring Mr. Billitz, as custodian of Econ-O-Pak, Inc.'s books and records to produce on September 16, 1980, at the State's Attorney's office, Articles of Incorporation for Econ-O-Pak, Inc., corporate by-laws of Econ-O-Pak, Inc., minutes of all stockholders' meetings of Econ-O-Pak, Inc., minutes of all meetings of Directors of Econ-O-Pak, Inc., all stock ledgers of Econ-O-Pak, Inc., all records of receipts and disbursements of Econ-O-Pak, Inc., from January 1, 1979, to the present and all records of vendor's licenses applied for, issued to or held by Econ-O-Pak, Inc., from January 1, 1979, to the present. This was the second summons issued to Econ-O-Pak, Inc.

Each appellant filed a "Motion to Quash Summons in Aid of A Criminal Information" on September 17, 1980. Both asserted that the summonses issued commanded the production of records and information relating to all the affairs of the corporation in an unlimited, exploratory fashion, whose purposes and limits could be determined only as it (the investigation) proceeded, and was unreasonable and oppressive; that commanding the production of records vital to the current operation of the corporation within five days was unreasonable and oppressive; that prior similar summonses had been issued and that the continuing, unlimited exploratory investigation was unreasonable, oppressive, and without justification; that the statute pursuant to which the summons was issued did not provide for the production of books and records; and that the statute violated the Fourth,

Fifth and Fourteenth Amendments of the United States Constitution. The State's Attorney for Baltimore County answered appellants' motion and claimed that the motion was frivolous, without adequate legal basis and was filed for the purposes of delay and to impede the due administration of justice.

A hearing was held on September 29, 1980, before Judge James S. Sfekas in the Circuit Court for Baltimore County. At the hearing the above issues were raised and discussed, including the construction of the statute, and Judge Sfekas denied appellants' motions.

On November 12, 1980, appellants were each served with a petition for show cause order and signed order requiring appellants show cause on or before November 25, 1980, why they should not be held in contempt for failure to obey an order of court previously issued. The petitions asserted that appellants had filed motions to quash summonses in aid of a criminal information, that appellants had been ordered to comply with the aforedescribed summonses issued, and that appellants had not complied with the summonses.

Appellants had noted an appeal (Nos. 1395 and 1396) on October 15, 1980, and in their answer to the petition for show cause order, asserted that appeals had been noted, that the rights of the parties had been settled, that the prior orders of court determined absolute constitutional rights of appellants, and that the show cause order failed to state the essential facts constituting the contempt. A hearing was held on November 25, 1980 and a memorandum opinion was issued on February 3, 1981, two months, nine days after hearing, by Judge Sfekas holding the appellants in contempt. Appellants were ordered to comply with the summonses previously issued by February 10, 1981, or face a fine of Five Hundred Dollars ($500.00) per day, for each appellant for each day of non-compliance thereafter. On February 11, 1981, the appellants noted their appeals from these orders in numbers 1664 and 1665 and the cases were subsequently consolidated.

The parties raise four issues which we will set out and discuss separately.

I. Are the summonses duces tecum under Md. Ann. Code Art. 27, § 592A limited to known defendants and specific crimes?

This issue was neither raised nor decided below and therefore, under Md. Rule 1085, is not before us. *Von Lusch v. State,* 279 Md. 255, 261-63, 368 A.2d 468 (1977).

II. Did the summonses issued below violate the constitutional rights of the appellants against unreasonable searches and seizures?

Relying on *Cobbledick v. United States,* 309 U.S. 323, 60 S. Ct. 540, 84 L. Ed. 783 (1940), the State contends that the order was not at this stage appealable. *See also, United States v. Ryan,* 402 U.S. 530, 91 S. Ct. 1580, 29 L. Ed. 2d 85 (1971) and *Alexander v. United States,* 201 U.S. 117, 26 S. Ct. 356, 50 L. Ed. 686 (1906). While these decisions hold that orders such as those involved in the instant case are not appealable, they are not binding insofar as procedure in state courts is concerned. We find dispositive the recent decision of the Court of Appeals in *Fred W. Allnutt, Inc. v. Commissioners of Labor and Industry,* 289 Md. 35, 421 A.2d 1360 (1980), wherein the Court, in ruling on a similar question, held as follows:

"Section 2A of Art. 89 provides for the issuance of an administrative search warrant only if certain prescribed conditions are met. The District Court's power comes exclusively from § 2A, and the court only has jurisdiction either to issue the search warrant or deny the warrant application. Thus, once Judge Kane had issued the warrant and denied Allnutt's motion to quash, nothing remained before the court. Consequently, the District Court's order was appealable as a final judgment under § 12-401 (a) of the Courts Article, and the circuit court was in error in dismissing Allnutt's appeal.

An analogous situation was involved in *Matter of Restland Memorial Park,* 540 F.2d 626 (3rd Cir. 1976), a case arising under the federal Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651-678 (1970). There, an inspector who had been refused entry to the Restland Cemetery applied to a federal district court for an inspection warrant. The warrant was issued, and Restland filed a motion to quash after again refusing to admit the inspector. The district court denied the motion and Restland appealed. The appellate court held that it had jurisdiction to hear the appeal, stating (540 F.2d at 627 n. 3):

> 'The present action is independent of, although ancillary to, any enforcement proceeding that may subsequently be pursued under OSHA. The order of the district court refusing to quash the warrant provides " 'a final and indisputable basis of action', as between the [agency] and the [cemetery] . . . ." *ICC v. Brimson,* 154 U.S. 447, 487, 14 S. Ct. 1125, 1137, 38 L. Ed. 1047 (1894). The matter reverts to the processes of the Department of Labor and there is nothing further for the district court to do.'

A similar result was reached in *Babcock and Wilcox Co. v. Marshall,* 610 F.2d 1128, 1131 (3rd Cir. 1979), in which the court held that it had jurisdiction to hear the appeal of a denial of a motion to quash an inspection warrant." *Id.* at 40-41.

Turning to the appellants' contention that the summonses violated their rights against unreasonable searches and seizures, we think their argument was effectively disposed of by *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208-09, 66 S. Ct. 494, 505-06, 90 L. Ed. 614 (1946), wherein the Court said:

> "[T]he Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much

indefiniteness or breadth in the things required to be 'particularly described', if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.

As this has taken form in the decisions, the following specific results have been worked out. It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command. This has been ruled most often perhaps in relation to grand jury investigations, but also frequently in respect to general or statistical investigations authorized by Congress. The requirement of 'probable cause, supported by oath or affirmation' literally applicable in the case of a warrant is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in 'describing the place to be searched, and the persons or things to be seized,' also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." (footnotes omitted.)

We note that the summonses were authorized by Md. Ann. Code Art. 27, § 592A, that they were issued as part of an investigation into whether the appellants were violating the

state's pornography statutes, and that the information sought was relevant in that the State's Attorney was seeking to discover who controlled the corporations.[1]

III. Does Md. Ann. Code Art. 27, § 592A authorize a subponea duces tecum?

Md. Ann. Code Art. 27, § 592A provides as follows:

"(a) The State's attorney may issue a summons for a witness for the purpose of obtaining evidence to prepare an information. The State's attorney shall report to the court a refusal by a witness to obey the summons and the court may issue a bench warrant for the witness. A witness has the right to have counsel present when responding to a summons and the State's attorney shall advise the witness of that right when the summons is issued.

"(b) A witness from whom testimony and evidence is being sought pursuant to this section shall be sworn. If the witness so requests the State's attorney shall cause a record to be made of all testimony and evidence obtained pursuant to the summons."

Appellants argue that inasmuch as the statute does not expressly authorize the production of books and records and several other Maryland statutes do make such authorizations specifically, the legislature must have intended that Section 592A not include such power. We think the appellants' argument is frivolous. A statute, if reasonably possible, is to be read so that no word is rendered surplusage. *In Re: James S.,* 286 Md. 702, 410 A.2d 586 (1980). The appellants would have us read the words "testimony" and "evidence" as having identical meanings, thereby rendering the term "evidence" in § 592A (b) surplusage. We decline to do so. "Testimony" and "evidence" are not identical in their meanings, "evidence" is a far broader

---

1. We note as did the trial judge below that he was not faced with a motion to modify the subpoena but simply to quash it. Both he and the state's attorney indicated they would be amenable to modifications to suit the convenience of the appellants but no such request was made.

and more inclusive term, embracing as it does physical objects and the written, as well as the spoken, word. *See, Black's Law Dictionary* (5th Ed. 1979). We must presume that the legislature, by its use of different words, intended different meanings. The term "evidence", as used in the statute involved herein, encompasses the materials sought by the State's Attorney.

IV. Did the appellants' failure to obey the orders of court after filing notices of appeal constitute a contempt of court?

Appellants contend that their failure to obey the subpoena after their appeals had been filed did not constitute contempt. The appellants and the appellee agree that the matter now under consideration involves constructive criminal contempt as set out in *State v. Roll and Scholl,* 267 Md. 714, 729, 298 A.2d 867 (1973). We also agree. Appellants contend that their conduct could not be found to be contemptuous because their appeal indicated that it was pursued in good faith. They further contend that the sanction imposed was a sanction for criminal contempt by an order which permitted them to purge the contempt thereafter which is appropriate only for civil contempt. Appellants cite no authority which directly supports their arguments and we know of none. At the outset we note that the appellants' appeal did not necessarily deprive the trial court of jurisdiction. *See, Pulley v. State,* 287 Md. 406, 414-19, 412 A.2d 1244 (1980), where the Court held that the trial court retained fundamental jurisdiction even after an interlocutory appeal had been filed unless there was a stay. Neither the trial court nor this Court granted a stay in the instant case. We therefore see no reason why the trial court could not proceed with the contempt proceedings subsequent to the filing of the first appeals.

It is apparent to us, as it was to the court in *Harford County Education Association v. Board of Education,* 281 Md. 574, 587-88, 591-92, 380 A.2d 1041 (1977), that the appellants intended to disobey the orders of the trial court. Their motives or reasons for disobeying are unimportant.

We see no reason why the trial court could not impose a coercive instead of a punitive punishment even though the proceedings were criminal in nature. It was certainly within the trial court's discretion to impose any legal punishment and we cannot gainsay its dual purpose of excusing past misconduct by securing compliance with its orders in the future. *See, State v. Roll and Scholl,* 267 Md. at 728, where the Court said:

> "These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt — a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt. *Winter v. Crowley,* 245 Md. 313, 226 A.2d 304 (1967); *Donner v. Calvert Distillers Corp.,* 196 Md. 475, 77 A.2d 305 (1950)."

*Orders affirmed.*
*Appellants to pay the costs.*