IN RE: SPECIAL INVESTIGATION NO. 195

[No. 83, September Term, 1982.]

*Decided January 24, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Joseph L. Evans, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Edward J. Barnes, Assistant Attorney General,* on the brief, for appellant.

*M. Albert Figinski* and *Ira C. Cooke* for appellee.

SMITH, J., delivered the opinion of the Court.

We are concerned in this case with whether a subpoena to produce certain documents before a Maryland grand jury has any viability beyond the term of that grand jury. We hold that it does not. Hence, we shall affirm the order of Allen, J., in the Criminal Court of Baltimore (now the Circuit Court for Baltimore City) which quashed the subpoena.

On December 20, 1978, pursuant to the provisions of Maryland Constitution Art. V, § 3, Acting Governor Blair Lee, III, authorized and directed the Attorney General of Maryland to investigate, among other things, "the administration of medical assistance under the State's Medicaid Program," with power "to present to any grand jury which may have jurisdiction over the matter any evidence and testimony that [the Attorney General might] consider necessary and appropriate to carry out this authorization and directive." The letter specified that if criminal charges were brought the Attorney General was "authorized to prosecute in any courts of this State such violations of the law as [might be] disclosed by the investigation with the full powers and authorities possessed by a State's Attorney." On November 21, 1979, Governor Harry Hughes issued a similar letter. Pursuant to that authority the Attorney General has created what he calls "the Medicaid Fraud Control Unit" of his office.

This saga began when an Assistant Attorney General issued a subpoena duces tecum under what is now codified as Maryland Code (1957, 1982 Repl. Vol.) Art. 27, § 592A to a health care provider in one of the counties of Maryland. The health care provider was directed to produce at the office of the Attorney General on September 24, 1981, virtually every document that had ever been connected with the corporate affairs of that provider. These ranged from the original articles of incorporation and corporate by-laws through all records of income and disbursements and all patients' medical files and financial records. The health care

provider moved to quash the summons. No hearing was held because the Fraud Unit elected to withdraw the summons.[1]

On December 14, 1981, upon the application of the Attorney General, the foreman of the Grand Jury of Baltimore City issued a subpoena duces tecum for the production of a number of documents before it. The list was not as all inclusive as in the prior summons. A motion to quash was filed on December 24. The grand jury's term expired on January 8. A supplement to the motion to quash was filed on February 1. It pointed out that the grand jury which issued the subpoena expired on January 8, that a new grand jury was empaneled on January 11, that "[t]he challenged subpoena is from the now defunct grand jury," and contended that "the defunct status of the issuing grand jury means that the subpoena ... cannot be enforced and must be quashed." The State met that with a petition to compel compliance with the subpoena. It asserted that the contentions of the health care provider were "without merit," and that the court should "summarily order [the health care provider] to comply with the Grand Jury Subpoena Duces Tecum returnable December 28, 1981." The subpoena was quashed. The State appealed. We issued a writ of certiorari ex mero motu prior to hearing of this case in the Court of Special Appeals.

Code (1974) § 8-107 (c), Courts and Judicial Proceedings Article, provides that on petition by the State's attorney a judge "may order a grand jury to be continued beyond its term to conduct a particular investigation." A grand jury so continued "has every power it originally had but is limited to the investigation specified by the judge." It "shall continue until its investigation is completed unless discharged sooner by the judge." No such petition or order was filed in this proceeding.

---

1. This withdrawal occurred prior to our opinion of *In Re Special Investigation No. 185,* 293 Md. 652, 446 A.2d 1151 (1982), in which we held that the subpoena power of a State's attorney is not analogous to that of a grand jury and "that, in order to utilize § 592A, the State's Attorney must have a then present purpose of filing an information based upon facts which, at a minimum, constitute probable cause to believe that an offense chargeable by information has occurred." *Id.* at 658.

At common law the term of service and the power of a grand jury ended at the expiration of the term of court for which it was summoned. See 38 Am. Jur. 2d *Grand Jury* § 31 (1968), and 38 C.J.S. *Grand Juries* § 32 a (1943). It must be presumed that, other than what is plainly stated by the General Assembly, no changes in the common law are intended. *Bradshaw v. Prince George's County,* 284 Md. 294, 302, 396 A.2d 255 (1979); *M. & C. C. v. Balto. Gas Co.,* 232 Md. 123, 135, 192 A.2d 87 (1963); and *Stoll v. Baltimore,* 163 Md. 282, 293, 162 A. 267 (1932).

Annot., 75 A.L.R. 2d 544 (1961), interprets *Holt v. Warden,* 211 Md. 619, 125 A.2d 842 (1956), *cert. denied,* 352 U.S. 1008 (1957), as holding that the power of a grand jury extends after expiration of the term of court for which it is called. Its authors simply did not understand the then prevailing Maryland system or statutes. *Holt* was a habeas corpus case. Judge Henderson said for the Court there:

> "Petitioner also claims he was indicted in what was a non-jury term of court. But obviously, a grand jury can be recalled at any time, and the point is not open on *habeas corpus* in any event. The court did not lose its jurisdiction to impose sentence in the first case, by the delay and end of the term of court. Cf. *Miller v. Aderhold,* 288 U.S. 206, and cases cited." 211 Md. at 621.

Formerly, many of the circuit courts in the counties of the State had what were called jury terms and non-jury terms. A jury simply was not empaneled for a non-jury term. The grand jury and the petit jury for each jury term were the grand jury and the petit jury for that court until the next ensuing jury term. A case might be tried at a non-jury term by a jury from the preceding jury term. From time to time grand juries were recalled subsequent to the expiration of a jury term but prior to the beginning of the next jury term. The statute in effect at the time of *Holt* was Code (1951) Art. 51, § 25. It is the statutory predecessor of our present

§ 8-107, Courts and Judicial Proceedings Article.[2] At the time of Holt's trial the act provided that whenever the jurors for any term of court in the counties had been drawn and the business of the term had so far proceeded that the daily services in attendance of either the grand jury or the petit jury or both was not necessary, then the court was not to finally discharge them but to excuse them "from further service for the time being until said jury or juries are reconvened for intermediate sessions, as [t]hereinbefore provided, for the balance of said jury term, and until the beginning of the next succeeding jury term of said court." The act went on to provide:

> "And during the remainder of said jury term of court until the beginning of the next jury term of said court, the grand and petit juries shall meet on every ninth week computed from the first day of said jury term of court unless that day be a legal holiday, in which event they shall meet the next day for indictments or trials, or either."

There was an exception for St. Mary's County, among others, from which *Holt* came, to the effect that the juries were not to meet on every ninth week unless the court informed the clerk to notify them to attend.

This case is controlled by *State v. Sheridan*, 248 Md. 320, 236 A.2d 18 (1967). The State there sought to have Sheridan compelled to give testimony before a grand jury. By the time the case reached this Court for decision the term of the grand jury before whom Sheridan was sought to be required to testify had ended. Sheridan moved to dismiss the appeal. Chief Judge Hammond said for the Court there:

> "The State's petition sought to have Sheridan compelled to give further testimony to the Grand Jury

---

2. Code (1974) § 8-107 (a), Courts and Judicial Proceedings Article provides:

> "*Court may excuse.* — A court may temporarily excuse a grand or petit jury, or both, subject to recall at any time before the start of the next jury term. At the time the court excuses the jury, it may inform the jurors of the day on which they shall return."

to which he had already given the source of his information. That Grand Jury's term has ended and it has been discharged. We could do nothing to undo or correct what has taken place and if we approved the lower court's action it would be an appeal *in vacuo*. In *Ex parte Maulsby,* 13 Md. 625 [(1859)], a prisoner who had been jailed for refusing to answer questions before a grand jury was ordered released by this Court because the jury had been discharged. The *Maulsby* holding was applied by the Supreme Court in *Shillitani v. United States,* 384 U.S. 364, 371, 16 L. Ed. 2d 622, 627 [(1966)], which said: 'Where the grand jury has been finally discharged, a contumacious witness can no longer be confined since he then has no further opportunity to purge himself of contempt.'

"In the leading case of *Loubriel v. United States* (2nd Cir. [1926]), 9 F. 2d 807, 809, Judge Learned Hand said for the Court:

'Nor does it make any difference that the order of committal gave him leave to purge himself before another grand jury. Each investigation is separate and independent; it terminates with the grand jury which undertakes it, and the next does not take it up as unfinished business. The order, if it could be construed as a direction to testify before another grand jury, would have been void. \*\*\*

'\*\*\* But the subpoena did not require his attendance before any other than the September grand jury. When that body adjourned, Loubriel was under no further duty to testify, and could, of course, be no longer compelled to discharge a duty which had ended.'

See also *Appeal of McClintock Mercantile Co.* (7th Cir. [1966]), 360 F. 2d 917, and *Graziadei v. United States* (7th Cir. [1963]), 319 F.2d 913." 248 Md. at 322-23.

*Sheridan* is in accordance with the view around the country. *See, e.g.,* Annot. 75 A.L.R. 2d 544, § 4 (1961); *State v. Superior Court In and For County of Pima,* 4 Ariz. App. 373, 420 P.2d 945 (1966), *vacated on other grounds,* 102 Ariz. 388, 430 P.2d 408 (1967); *People v. Brautigan,* 310 Ill. 472, 477-78, 142 N.E. 208 (1923); *In re Frye,* 173 Kan. 392, 396, 246 P.2d 313 (1952); *State v. Brown,* 195 Mo. App. 590, 591-92, 194 S.W. 1069 (1917); and *Adami v. District Court,* 124 Mont. 282, 291, 220 P.2d 1052 (1950).

The cases upon which the State relies are not apposite. The grand jury was dead. There was no one to whom the subpoena was returnable. The fact that the subpoena authorized the material to be delivered to the Attorney General does not change the situation. The Attorney General is not the grand jury. As we held in *In re Special Investigation No. 185,* 293 Md. 652, 446 A.2d 1151 (1982), he has not the power of a grand jury. It thus was impossible to enforce the subpoena. If a succeeding grand jury desired the information sought, it could and should have issued a new subpoena. It did not do so. It follows that Judge Allen correctly quashed the subpoena.

> *Order affirmed; costs to be paid by Mayor and City Council of Baltimore.*