# IN RE: SPECIAL INVESTIGATION NO. 244

[No. 117, September Term, 1982.]

*Decided May 5, 1983.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*M. Albert Figinski* and *Ira C. Cooke* for appellant.

*Paul F. Strain, Deputy Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Stephen M. Schenning* and *Stefan D. Cassella, Assistant Attorneys General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. MENCHINE, J., dissents and filed a dissenting opinion at page 98 *infra*.

This is yet another case emanating from the Attorney General's ongoing investigation of Medicaid fraud in Maryland. A subpoena duces tecum was issued to the custodian of records of a joint venture, which is the landlord of a health care provider. The principal owners of the joint venture also own a significant interest in or participate in the management of two health care providers. The joint venture and its principal owners sought to quash the subpoena. They appealed from an unfavorable decision. We then granted their petition for a writ of certiorari before the case was heard by the Court of Special Appeals.

We are faced with the following questions: (1) Whether the denial of the motion to quash is appealable; (2) whether the Attorney General has the authority to act as prosecutor in this area; (3) whether the Grand Jury of Baltimore City has power to summon records of an entity located beyond the confines of Baltimore City; (4) whether procedures are required to prevent improper concurrent use of subpoenaed material by persons or entities other than the grand jury; and (5) whether the subpoena duces tecum here is defective in that part which in effect requires the recipient to construct a document. We shall hold the order appealable, that the Attorney General and the grand jury have not exceeded their authority, that there appears to be no improper concurrent use of materials here, and that the recipient of a subpoena may not be required to create a document.

The subpoena in question was issued on May 19, 1982, by the Grand Jury of Baltimore City at the instance of the Medicaid Fraud Unit of the office of the Attorney General. The motion to quash was heard and denied on July 2. An appeal was immediately entered to the Court of Special Appeals. The term of the grand jury has long since expired. No effort was made to enforce the subpoena pending the appeal. No effort was made to have the grand jury continued beyond its term. No similar subpoena has been issued by a

subsequent grand jury. It follows, therefore, that there is now no one to whom the subpoena is returnable and the subpoena must be quashed. See *In Re Special Investigation No. 229*, 295 Md. 584, 458 A.2d 80 (1983), and *In Re Special Investigation No. 195*, 295 Md. 276, 454 A.2d 843 (1983). However, because there is likely to be a recurrence of the issues here presented and upon the recurrence the same difficulty which prevented the issues from being heard in time is likely to again prevent a resolution, we shall address the issues presented. See *Equitable Tr. Co. v. State Comm'n*, 287 Md. 80, 89, 411 A.2d 86 (1980); *Reyes v. Prince George's County*, 281 Md. 279, 300, 380 A.2d 12 (1977), and Maryland Rule 885. We shall set forth additional facts as we discuss the questions presented.

## 1. Appealability

The Attorney General has moved to dismiss the appeal on the ground that the denial of a motion to quash is not appealable. He relies heavily upon *Cobbledick v. United States*, 309 U.S. 323, 327-28, 60 S. Ct. 540, 84 L. Ed. 783 (1940), and its progeny. In *Cobbledick* Justice Frankfurter stated for the Court, "Finality as a condition of review is an historic characteristic of federal appellate procedure." *Id.* at 324. There the Court was faced with an order denying a motion to quash a subpoena duces tecum. The Court said, "The witness' relation to the inquiry is no different in a grand jury proceeding than it was in the *Alexander* case," *Id.* at 328, referring to *Alexander v. United States*, 201 U.S. 117, 26 S. Ct. 356, 50 L. Ed. 686 (1906). In *Alexander* witnesses were directed to appear and produce documents before a special examiner designated by the circuit court to hear testimony in a suit brought by the United States to enforce the Sherman Act. Upon refusal to submit the documents called for in the subpoena, the United States petitioned the circuit court for an order requiring compliance. The petition was granted. An appeal followed to the Supreme Court. The appeal was dismissed for want of

jurisdiction. In the course of its opinion, 201 U.S. at 121-22, quoted in *Cobbledick,* 309 U.S. at 327, the Court held that a right of review which would follow from an order holding a witness in contempt "is adequate for his protection without unduly impeding the progress of the case. . . . This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit."

*Cobbledick* was reaffirmed by the Supreme Court as recently as in *United States v. Ryan,* 402 U.S. 530, 91 S. Ct. 1580, 29 L. Ed. 2d 85 (1971). In *Ryan* Justice Brennan referred for the Court to the exception expressed in *Perlman v. United States,* 247 U.S. 7, 38 S. Ct. 417, 62 L. Ed. 950 (1918), where the subpoena directed a third party to produce exhibits which were not the property of the person to whom the subpoena was issued and the owner claimed immunity from the production order. The Supreme Court there allowed immediate review stating that to have denied such review would have left Perlman "powerless to avert the mischief of the order," *Id.* at 13, for, as Justice Brennan put it for the Court in *Ryan,* "the custodian could hardly have been expected to risk a citation for contempt in order to secure Perlman an opportunity for judicial review." 402 U.S. at 533. Technically the subpoena here may be to a third party since it does not clearly appear whether the recipient is an employee. In *Perlman* the recipient was not an employee. Thus, if "the custodian of records," the title used in the subpoena, is an employee, he is under the direction and control of his employers, his duties may be changed at will, and he may not be in actual control of the records.

Cases which appear to follow *Cobbledick* include: *United States v. Harrod,* 428 A.2d 30 (D.C. 1981); *State v. Grover,* 387 A.2d 21 (Me. 1978); *Commonwealth v. Winer,* 380 Mass. 934, 404 N.E. 2d 654 (1980); and *In Re: Petition of Arlen Specter,* 455 Pa. 518, 519-20, 317 A.2d 286 (1974).

Appellants counter with the rule laid down in New York in such cases as *Mtr. Cunningham v. Nadjari,* 39 N.Y. 2d 314, 317, 347 N.E.2d 915, 383 N.Y.S.2d 590 (1976), and

*Matter of Boikess v. Aspland,* 24 N.Y.2d 136, 138-39, 247 N.E.2d 135, 299 N.Y.S. 2d 163 (1969). Those cases carry little weight here, however, because the reasoning is that they were final orders in special proceedings on the civil side of the docket in a court vested with civil jurisdiction. The orders here were in the Criminal Court of Baltimore (now the Circuit Court for Baltimore City) which at the time in question was vested only with criminal jurisdiction.

As in the federal system, with certain limited exceptions not applicable to this case, appeals from circuit courts in this State are limited to ones from final judgments by Maryland Code (1974) § 12-301, Courts and Judicial Proceedings Article. Our consistent holding has been that a final judgment from which an appeal will lie is one which settles the rights of the parties or concludes the cause. *In Re: Special Investigation No. 231,* 295 Md. 366, 455 A.2d 442 (1983), and cases there cited. The proceeding here consisted only of a petition to quash the subpoena duces tecum.

In another of the cases involving the Attorney General's investigation of Medicaid fraud, *In Re Special Investigation No. 185,* 293 Md. 652, 655-56 n. 2, 446 A.2d 1151 (1982), Judge Rodowsky recently wrote for the Court, after noting that the trial court directed production forthwith of documents enumerated in a subpoena duces tecum:

> "Following the order of September 3, 1981 nothing remained before the Criminal Court of Baltimore. Thus the order was appealable as a final judgment. *See* Randall Book Corp. v. State, 49 Md. App. 131, 430 A.2d 624 (1981), applying to a case of this type the principle enunciated in Fred W. Allnutt, Inc. v. Comm'r of Labor and Indus., 289 Md. 35, 421 A.2d 1360 (1980). *Cf. In re* Special Investigation No. 186, 293 Md. 304, 443 A.2d 120 (1982) (appeal entertained without discussion)."

In *Specter,* 455 Pa. 518, there was a dissent by Justice Nix in which he said:

"I recognize that the ordinary route for challenging a subpoena is through contempt. However, I am in fundamental disagreement with such an approach where there is substantial question concerning the authority to issue the subpoena. In such a case, a party with real doubt as to his legal status is forced to act upon that status at his peril. If he refuses to obey the subpoena and his challenge is not sustained, he will be subject to criminal sanction. If he obeys the subpoena, his challenge may well be moot because the harm he sought to avoid — be it unreasonable search and seizure, self-incrimination or a general invasion of privacy — has already occurred.

"A civil litigant in such a dilemma would be allowed the assistance of a declaratory judgment in order to avoid future litigation. See generally, *Friestad v. Travelers Indemnity Co.,* 452 Pa. 417, 306 A.2d 295 (1973). The primary thrust of our criminal law is to prevent crime. It is fundamentally inconsistent to force a citizen to commit a crime in order to preserve his right to appeal, while at the same time affording civil litigants access to the courts." 455 Pa. at 521.

We do not believe in this day and age a person should be obliged to decide whether he should risk contempt in order to test the validity of a subpoena duces tecum, particularly where, as here, the person to whom the subpoena is directed may not be one of the targets of the investigation but a possibly innocent custodian. Moreover, as Judge Rodowsky pointed out for the Court in *In Re Special Investigation No. 185* and as we pointed out more recently in *In Re Special Investigation No. 231,* in the procedural setting of this case nothing remained before the court. Hence, we hold the order here to have been appealable.

## 2. Power of the Attorney General

The Attorney General is acting pursuant to authorization in a series of letters from the Governor of Maryland. See the reference to those letters in *In Re Special Investigation No. 195,* 295 Md. at 277. Maryland Const. art. V, § 3(a) provides in relevant part:

> "(a) The Attorney General shall:
> "(1) . . .
> "(2) Investigate, commence, and prosecute or defend any . . . criminal suit or action or category of such suits . . . which . . . the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended."

Appellants assert, "The broad grant to the Attorney General by the Governor is in derogation of, and conflicts with, what the General Assembly has conferred on the State's Attorneys and Special Prosecutor." It is elementary that constitutional provisions prevail over statutory provisions. In the wake of *Murphy v. Yates,* 276 Md. 475, 348 A.2d 837 (1975), the Constitution was amended so that art. V, § 9 now provides, "The State's Attorney shall perform such duties . . . as shall be prescribed by the General Assembly," thereby permitting the creation of a State Prosecutor by act of the General Assembly. See Code (1957, 1981 Repl. Vol.) Art. 10, § 33B. *Murphy* held that under the Constitution as it then existed the attempt by the General Assembly to create a State Prosecutor infringed upon the powers granted to State's attorneys by the Constitution.

Appellants seek to rely upon what was proposed by the Constitutional Convention of 1967, and rejected by the people in 1968, as in some way illustrating an intent that the Attorney General not have the power here sought to be used. That proposed Constitution can effectively be used to interpret our present Constitution, that from the Convention of 1867, only in the case of an amendment to the present Constitution adopting some of the language of the proposed Constitution, as has been done in certain instances.

The argument here overlooks the fact that there were a substantial number of delegates at the 1967 Convention who sought to avoid cluttering our basic document with what they considered to be unnecessary matter. See the discussion by J. Wheeler, Jr. & M. Kinsey, *Magnificent Failure — The Maryland Constitutional Convention of 1967-1968,* 157-59 (1970).

We hold that the Attorney General in this instance is fully vested with the power to pursue the investigation in question.

### 3. Power to subpoena person from outside Baltimore City

The appellants contend that since the landlord is not a Medicaid provider and is located outside Baltimore City, the Grand Jury of Baltimore City "does not have the power to pursue the investigation of a county land holding company that is not a Medicaid provider." A skillful argument has been woven to the effect that what is being done here amounts to a special grand jury, with the contention made that proposals for such grand juries have been rejected in the past.

In Circuit Administrative Judges of Maryland, *A Handbook for Grand Jurors in Maryland* § 11 (1976), it is stated in pertinent part:

"As a part of your duties as an accusatory body, acting upon evidence presented, you have general inquisitorial powers to inquire into abuses and evils which may exist generally within your jurisdictions. You are entitled to take notice of any matter of public danger or abuse, to inquire into it, and to make public your findings with regard to it. For this purpose you have the right to call before you any public official or private citizen in furtherance of your inquiry." *Id.* at 11.

This advice for prospective grand jurors is in line with the charge to grand juries given by many judges over the years

to the effect that their power of inquiry ordinarily gives them the right to summon before them any person in the State.

Appellants' arguments on the power to subpoena witnesses from counties beyond that in which the grand jury is sitting confuse the power to subpoena a witness with the legality of a subsequent indictment. The authority to return an indictment rests with the grand jury of the county in which the offense occurred, absent contrary statutory authorization. 1 J. Bishop, *New Criminal Procedure* § 859, 495-96 (1895). Maryland follows this principle. *See, e.g., State v. Williams,* 85 Md. 231, 233, 36 A. 823 (1897), and *Parrish v. State,* 14 Md. 238 (1859). See also *McBurney v. State,* 280 Md. 21, 371 A.2d 129 (1977), and *Urciolo v. State,* 272 Md. 607, 325 A.2d 878 (1974), discussing *venue* of circuit courts to try criminal cases. The discussion of venue in these two cases logically parallels the question of grand jury authority to indict. In *McBurney* Judge Orth said for the Court:

> "There are two facets to the jurisdiction of a court — jurisdiction over the subject matter and venue. With respect to the subject matter, within its county, a circuit court of this State has full common law jurisdiction in all criminal cases committed in Maryland except where limited by law. Maryland Code (1974) Courts and Judicial Proceedings Article § 1-501. Venue, however, is the place of trial, or where a criminal trial may properly occur. Jurisdiction in this sense relates only to the place where either party may require the case to be tried and unless 'venue' is given jurisdictional effect by being a localized action, the question of jurisdiction of subject matter is not presented. The case here may be resolved on the issue of whether the venue was properly laid. Jurisdiction of the subject matter is not involved.
>
> " 'At common law criminal offenses were tried by a jury of the county where the offense was

committed.' *Kisner v. State,* 209 Md. 524, 529, 122 A.2d 102 (1956), citing 4 *W. Blackstone, Commentaries* *303. *See* 1 *Wharton's Criminal Procedure* (12th ed. 1974) § 36 (hereinafter cited as *Wharton); L. Hochheimer, Law of Crimes and Criminal Procedure* (1st ed. 1897) § 75 .... In *Kisner* we gave a comprehensive history of the venue of the circuit courts of this State in criminal cases. 209 Md. at 529-536. We found the common law rule, that the proper venue of a crime is the county of commission, to be the general rule in Maryland. It is widely recognized, however, that in the absence of any limitation by constitutional provision, the power of the legislature to fix the venue of criminal prosecution in a county other than that in which the crime was committed is unrestricted. 1 *Wharton* § 36. *Kisner* pointed to a number of statutes in which the General Assembly of Maryland had prescribed the place of trial, and noted cases in which the Court of Appeals had construed statutes as authorizing trial in a county other than the one in which the crime was committed.... *Kisner* concluded that the common law necessity for trial in the county of the commission of the crime is not a fundamental right or requirement. *Id.,* at 531." 280 Md. at 31-32.

The power to compel attendance of witnesses is broader in scope than the issue of place of trial. The grand jury in Maryland, having plenary inquisitorial power, cannot be limited to witnesses located solely in the particular county where the offense occurred. Because the grand jury must use the power of the court to issue and enforce subpoenas, a study of the supervising court's power is appropriate. There is no Maryland prohibition against commanding the attendance of witnesses at a trial where the witnesses reside outside the county of trial. Code (1974) § 1-501, Courts and Judicial Proceedings Article provides:

"The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal."

The criminal jurisdiction of the grand jury regarding offenses committed in its county parallels this section. Section 6-102(a) provides:

"*Basis of personal jurisdiction.* — A court may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State."

Section 9-202 provides for compensation of witnesses at specified rates. Subsection (c) (2) relative to Baltimore City specifically states, "A witness who resides outside the city limits is allowed itinerant charges." Moreover, § 9-202 (a) allows itinerant charges to "witnesses from other principal county subdivisions." These statutory provisions leave no doubt as to the propriety of securing witnesses from other counties.

"The grand jury possesses powers and duties coextensive with the jurisdiction of the court of which it is an integral part." S. Thompson & E. Merriam, *A Treatise On the Organization, Custody and Conduct of Juries,* § 604 (1882). These authors go on to discuss general inquisitorial powers in § 615, stating that in England the grand jury was " 'returned to inquire of *all offences in general* in the county, determinable by the court into which they are returned,' " referring to Serjeant Hawkins' definition of an indictment. (Emphasis theirs.) Inter-county jurisdiction in compelling witnesses to attend grand jury hearings was not unknown to

our English ancestral grand juries. See 1 J. Chitty, *A Practical Treatise On the Criminal Law* *320-21 (1819), and *The King Against G. Ring,* 8 T. R. (Durnford & East) 585 (1800).

A situation somewhat analogous to the case at bar was before the court in *Samish v. Superior Court,* 28 Cal. App. 2d 685, 83 P.2d 305 (1938). In that case a grand jury was investigating charges against state legislators pertaining to lobbying, bribery, and conspiracy. A writ of prohibition was sought to restrain the grand jury and the prosecuting officers of Sacramento County from obtaining possession by subpoena or otherwise of copies of petitioner's income tax returns for certain years and from compelling a disclosure of the contents thereof. The court there said:

> "It is not necessary that formal charges of specific offenses shall first be made against particular named individuals to authorize a grand jury to institute an investigation thereof. One of the chief purposes of a grand jury is to investigate and ascertain whether crimes have been committed within the borders of its county and to institute criminal prosecutions thereof. A grand jury is not deprived of jurisdiction to investigate asserted public offenses merely because its members are uncertain as to whether a crime was actually committed, whether it was really committed within the borders of the county, or because of a lack of identity of the particular individual who perpetrated the crime. If it should develop after a thorough investigation by a grand jury that the alleged crime was really committed in another county that does not render the proceedings invalid or void, but merely precludes the presenting of an indictment therefor in that county." 28 Cal. App. at 688.

It must not be forgotten that, as Justice Stewart pointed out for the Court in *United States v. Dionisio,* 410 U.S. 1,

15-16, 93 S. Ct. 764, 35 L. Ed. 2d 67 (1973), "a sufficient basis for an indictment may only emerge at the end of the investigation when all the evidence has been received." He went on to quote for the Court in that case from *Hale v. Henkel,* 201 U.S. 43, 26 S. Ct. 370, 50 L. Ed. 652 (1906):

> "It is impossible to conceive that ... the examination of witnesses must be stopped until a basis is laid by an indictment formally preferred, when the very object of the examination is to ascertain who shall be indicted." 201 U.S. at 65.

The Court ended its opinion in *Dionisio* by stating:

> "Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. Cf. *United States v. Ryan,* 402 U.S. 530, 532-533; *Costello v. United States,* 350 U.S. 359, 363-364; *Cobbledick v. United States,* 309 U.S. 323, 327-328. The grand jury may not always serve its historic role as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor, but if it is even to approach the proper performance of its constitutional mission, it must be free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it." 410 U.S. at 17-18 (footnote omitted).

In *United States v. Calandra,* 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974), Justice Powell said for the Court:

> "Furthermore, a witness may not interfere with the course of the grand jury's inquiry. He 'is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his.' *[Blair v. United States,* 250 U.S. 273, 282, 39

S. Ct. 468, 63 L. Ed. 979 (1919)]. Nor is he entitled 'to challenge the authority of the court or of the grand jury' or 'to set limits to the investigation that the grand jury may conduct.' *Ibid.*" 414 U.S. at 345.

It will be noted that in *Calandra* Justice Powell quoted for the Court from *Blair v. United States,* 250 U.S. 273, 282, 39 S. Ct. 468, 63 L. Ed. 979 (1919). It was pointed out in *Blair:*

> "As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. *Hendricks v. United States,* 223 U.S. 178, 184." 250 U.S. at 282.

*Blair* further states:

> "In truth it is in the ordinary case no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not. At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction." *Id.* at 282-83.

It is important to remember that in this instance we have no presentment or indictment. The grand jury is investigating. We know not the theory upon which it is proceeding. We are not even certain as to the target of its inquiry. No charges have been brought. There will be time enough for a challenge to venue if and when an indictment is returned.

We hold that appellants here will not be heard to contend that the Grand Jury of Baltimore City lacked the power to subpoena the documents in question in aid of its investigation into possible violations of the criminal law of this State which may have occurred within Baltimore City.

### 4. Concurrent use of materials

It is the contention of the appellants that they produced sufficient evidence of concurrent use of materials gained through criminal investigation so that the court supervising the grand jury either should have held a hearing to determine the boundaries of production or, in the alternative, should have established prophylactic devices to guard against concurrent use of any information produced to the grand jury. It is contended that even if production of documents were required that the court should inquire further and delimit the production or regulate it to assure that the production did not result in concurrent use of the materials produced.

The trial judge who heard the motion said to an assistant Attorney General in the course of the hearing:

"You should be advised that you cannot under the law turn any of the information you receive through the Grand Jury subpoena over to anyone else for any purpose and you should direct the people in your office if they should happen to come in contact with it."

He later said in making his ruling:

"I think there's a clear understanding that nothing that goes before this Grand Jury shall be divulged to anybody, and if it is, then I think if you got any reason to believe that anything by virtue of this subpoena is divulged, then I think you have a perfect right to come back here and bring that party before the Court and have them — and have the Court determine whether they have violated the confidentiality of the Grand Jury. I think that's perfectly clear. There's no question about that. So, I think they have given you that assurance. Whether it holds up I think they ought to regulate the people that work under them to that extent and make it perfectly clear what the Court has said in this case."

Code (1974, 1980 Repl. Vol.) § 8-401 (e), Courts and Judicial Proceedings Article provides:

> *"Disclosure of grand jury proceedings.* — A person who discloses the contents of any grand jury proceeding, except for persons authorized by law to make such disclosures, is subject to a fine of not more than $1,000 or imprisonment for not more than one year, or both."

The Attorney General has opined, 60 Op. Att'y Gen. 290, 292 (1975), that the prohibition in § 8-401 (e) "must be construed as applying only to 'persons selected as grand jurors.' " We agree.

Grand jury secrecy is well established in Maryland. For instance, in *Coblentz v. State,* 164 Md. 558, 166 A. 45 (1933), this Court reversed a conviction because of the presence in the grand jury room of an unauthorized individual in the person of an attorney representing certain plaintiffs in civil litigation against the banking institution of which the defendant was president. The latter was accused of accepting a deposit when the institution was, to his knowledge, insolvent.

No evidence has been presented of any violation of grand jury secrecy in connection with this investigation. We see no reason to assume that somebody at sometime in connection with this investigation may violate the established procedures. When that violation takes place appropriate action can then be taken.

### 5. The wording of the subpoena duces tecum

The third item in the subpoena duces tecum here called for "[n]ames of all partners, officers, employees and accountants employed or retained by [the landlord] for the years 1975 through and including 1981." The appellants contend here that "the demand was framed in the nature of an interrogatory filed in a civil suit. It called for the production of no document; rather, it called for the creation of an answer to a request for information."

An oft quoted passage on subpoenas duces tecum is found in 8 Wigmore, *Evidence* § 2200 (1) (iv) (McNaughton rev. 1961):

> "A peculiarity of the subpoena duces tecum is that, in the nature of things, it must *specify,* with as much precision as is fair and feasible, the *particular documents desired.* This is because the witness ought not to be required to bring what is not needed, and he cannot know what is needed unless he is informed beforehand." (Emphasis in original.)

To similar effect see 81 Am. Jur. 2d *Witnesses* § 14 (1976); 97 C.J.S. *Witnesses* § 25 (a) and (e) (1957); 3 W. Blackstone, *Commentaries* *382; and Annot., 23 A.L.R. 2d 862 (1952).

There are state court decisions in accord with this proposition. *See, e.g., Nabors v. State,* 263 Ark. 409, 411, 565 S.W. 2d 598 (1978), *cert. denied,* 439 U.S. 1067 (1979); *People v. Reynolds,* 350 Ill. 11, 20, 182 N.E. 754 (1932); *Oakland County v. Bice,* 386 Mich. 143, 149, 191 N.W. 2d 338 (1971); *State v. Kelton,* 299 S.W.2d 493, 497 (Mo. 1957); *Vaughan v. Broadfoot,* 267 N.C. 691, 149 S.E.2d 37 (1966); *Amer. Car & Fdy. Co. v. Water Co., Appellant,* 221 Pa. 529, 535, 70 A. 867 (1908); and *Central Soya Company, Inc. v. Henderson,* 99 R.I. 388, 396, 208 A.2d 110 (1965).

We find no definition of the purpose of a subpoena duces tecum in a criminal context among the Maryland Rules. It is significant, however, that Maryland Rule 115 (a) states that "[a] summons to a witness ... may also command the person to whom it is directed to produce books, papers, documents or other tangible things designated therein."

The grand jury may designate papers it wishes produced. It may query a witness or witnesses as to their knowledge of certain matters. It has no right, however, to request a witness to construct a document as has been done here.

> *Remanded to Circuit Court for Baltimore City with directions to quash the subpoena duces tecum issued in this case; each party to pay his respective costs.*

*Menchine, J. dissenting:*

I would hold that there was no right of appeal in this case.