***Trusted Science and Technology Inc., v. Nicholas Evancich, et al.***
Nos. 38 & 1437, Sept. Term. 2023
Opinion by Leahy, J.

**Witnesses > Compelling Testimony > Subpoenas > Relevance, Materiality, and Admissibility of Testimony Sought; Necessity > Nonparties**
The ability of a person (including a nonparty) to object under Maryland Rule 2-510(f) encompasses an objection that the discovery sought by the subpoena exceeds the bounds of Rule 2-402, including that the discovery sought is not "relevant to the subject matter involved in the action[.]" Md. Rule 2-402(a).

**Witnesses > Compelling Testimony > Subpoenas > Relevance, Materiality, and Admissibility of Testimony Sought; Necessity > Nonparties**
The circuit court erred in compelling production from the appellant nonparty without considering the appellant nonparty's objection that the requests were overbroad and not relevant.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

Nos. 38 & 1437

September Term, 2023

_____

TRUSTED SCIENCE AND
TECHNOLOGY, INC.

v.

NICHOLAS EVANCICH, *ET AL.*

_____

Leahy,
Reed,
Ripken,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: July 22, 2024

\* Tang, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

This consolidated appeal is brought by Trusted Science and Technology, Inc. ("TST") from a pair of orders entered in the Circuit Court for Montgomery County in a divorce action between appellees, Nicholas Evancich ("Husband") and Belen Coleman ("Wife"). The first order compelled the company's production of certain highly confidential business records, subject to a protective order, in response to a third-party discovery subpoena. The second order struck TST's contempt petition, which it filed to enforce the protective order upon learning that Husband, Wife, and their counsel may have breached it. On appeal, TST presents two issues for our review:

1. "Whether the circuit court erred in concluding that a third party lacks legal standing to argue overbreadth and relevance under Maryland Rule 2-510, and in ordering [TST] to produce all documents subpoenaed by the parties, without any consideration of [TST's] substantive objections, on the ground that [TST's] interests are covered by a protective order entered in the case."

2. "Whether the circuit court erred in striking [TST's] petition for contempt against the parties under Maryland Rule 2-322(e) for their violations of that same protective order, on the ground that a third party lacks legal standing under Maryland Rule 15-206(b)(2) to initiate contempt proceedings for violations of an order entered exclusively for that third party's benefit, and without regard to the doctrine of judicial estoppel."

Although we conclude that the first issue is moot, for the reasons provided in our discussion, we exercise our discretion to reach the merits under the particular circumstances presented. Accordingly, we hold that the ability of a person (including a nonparty) to object under Maryland Rule 2-510(f) encompasses an objection that the discovery sought by the subpoena exceeds the bounds of Rule 2-402, including that the discovery sought is not "relevant to the subject matter involved in the action[.]" Here, TST had standing to object to Wife's subpoena on relevance and overbreadth grounds, and the

circuit court erred in compelling TST's production without considering its objections on those grounds. Third parties that are subpoenaed for their confidential information and involuntarily drawn into divorce actions should be able to seek protection from the courts.

Second, we conclude that under *Kadish v. Kadish*, 254 Md. App. 467 (2022), and *Pack Shack, Inc. v. Howard County*, 371 Md. 243 (2002), TST's appeal from the circuit court's decision to strike the petition for contempt is not properly before this Court. Therefore, we shall dismiss appeals Nos. 1437 and 38.

## BACKGROUND

Husband and Wife married in November 2017. Husband is the co-founder of TST and owned shares of the company during the marriage. TST is an engineering company focused on cyber security with its headquarters in Rockville, Maryland. TST engages in highly competitive government contracting with various defense industry agencies. Wife worked for TST as an administrator during the marriage.

### *Underlying Action: Husband v. Wife*

Husband initiated the underlying case in March 2021 when he filed for an absolute divorce in the Circuit Court for Montgomery County. In April 2021, before Wife even filed her answer, the court held a hearing at which the parties placed on the record the terms of a consent agreement reached in a separate case emanating from protective orders that the parties had filed against each other.[1] That agreement provided, among other things,

---

[1] Wife filed a Petition for Order of Protection from Domestic Violence on March 22, 2021, and Husband filed a cross-petition. Reciprocal protective orders were issued. The protective order case was closed after the parties reached a settlement, the terms of which were placed on the record in the divorce action.

that Husband and Wife would stay at least 500 feet away from one another and would have no contact except through counsel "and only for the purposes of resolving or litigating their pending divorce." Wife filed her Answer in May 2021, and, on June 15, the court entered an order incorporating, but not merging, the parties' on-the-record agreement.

Shortly thereafter, Wife petitioned for contempt, alleging Husband "ha[d] violated practically every provision of the June 15[], 2021, Order and Agreement" and seeking Husband's incarceration until he purged the contempt. From there, the parties remained embroiled in discovery disputes throughout the first year of the divorce case until discovery closed, initially, on January 25, 2022.

Then on May 13, 2022, the discovery disputes ramped up again after Wife filed an amended answer in which she requested that the court, among other things, determine "the ownership of all personal and real property titled in the name of both parties, or either of them, including any and all retirement and pension benefits." She also filed a separate motion seeking leave to conduct additional discovery. Husband, in turn, filed a "supplemental and amended complaint for absolute divorce." Wife responded by filing an answer to Husband's amended complaint and a countercomplaint in which she included, for the first time, a claim for equitable distribution seeking—in relevant part—a valuation of Husband's shares in TST. Husband moved to strike all of Wife's pleadings, but the trial court ultimately denied Husband's motions and granted Wife's. On July 18, 2022, the

3

court allowed Wife 11 days to conduct additional discovery. TST was drawn into the case during this second discovery phase.

***Parallel Action: TST v. Wife***

Before continuing our overview of the underlying divorce action, we must first rewind a bit to discuss a separate, but not wholly unrelated, action. As earlier mentioned, Wife worked for TST during the marriage. She handled many administrative tasks and responsibilities for the company but had no specific written duties. As part of her employment, TST gave Wife a laptop for both personal and business use. On that laptop, Wife maintained information related to the company's human resources and accounting data. She also had access to TST's financial information, bid proposals, government contracts, corporate records, and other trade secrets. Wife was tasked with creating a company website, to which she alone retained administrator access on her laptop.

In March 2021, the co-founder of TST, Dr. Kyung Kwak, asked Wife to fill in a spreadsheet with account information for the accounts which she handled, and to return company property in her possession. Wife imparted some of the information requested, but stated that most of it was on her computer, which she kept in her possession. At the April 9 hearing in the protective order case, Wife agreed to turn over to Dr. Kwak the passwords and specific information needed for TST's accounts and programs. Wife did not comply with her agreement to turn over the requested information by close of business April 12, nor did she respond to Dr. Kwak's ensuing request for return of TST's information and property.

4

On April 23, 2021, Dr. Kwak sent Wife a formal letter terminating her employment with TST for, among other reasons, disclosing company confidential information to an employee and "holding company assets hostage[.]" When Wife refused to return TST's property and confidential information, the company sued her, also in the Circuit Court for Montgomery County. TST requested injunctive relief and damages arising out of Wife's alleged conversion, computer fraud and abuse, misappropriation of trade secrets, and violation of the federal Defend Trade Secrets Act. This case progressed parallel to the underlying divorce case.

After a hearing in June 2021, the court granted TST a preliminary injunction and ordered Wife to transfer the domain name for the website to TST and to return, through counsel, the computer in her possession to TST. TST was authorized to review the computer and delete or remove any company files before returning the computer to Wife. The transfer was to take place no later than July 2, 2021.

Before turning the laptop over to TST, however, Wife copied all the information onto a thumb drive and wiped the laptop by resetting the operating system two days before the transfer deadline. The next day, she placed 13 files back onto the laptop and turned it over to the company. Although TST was immediately aware of Wife's misconduct, the company waited more than a year before petitioning for contempt and enforcement.[2]

Following a hearing in January 2023, Wife was found in contempt for removing the information from the laptop. She was given until January 11 to purge the contempt by

---

[2] The company explained that it "took no immediate legal action due to the legal costs involved, and already incurred . . . by a small company."

"providing to her counsel all thumb drives and external hard drives in her possession or control that include any information or files that in any way pertain to TST . . . except for information that was produced to her in her domestic case." She failed to do so, and the court modified the contempt order to provide that Wife was to report to the seventh floor of the courthouse from 8:00 a.m. until 5:00 p.m., starting on January 27, each business day until she purged her contempt by delivering the drives to TST's counsel.

After a two-day bench trial, the circuit court, on February 7, 2023, held a hearing to deliver the court's ruling in the case. The court observed that Wife "has spent the last seven or eight business days on the seventh floor of the [c]ircuit [c]ourt, as she has refused to turn over the required drives as ordered, in defiance of now several court orders." The court found that "[t]here was no legitimate business reason for [Wife's] actions. She acted purposefully to spite [TST] and/or [Husband]. Her actions were intentionally spiteful and malicious." The court also found that Wife had "demonstrated that she w[ould] use the information wrongfully in her possession to the detriment of [TST]." The court noted that, "[s]hould she share the information with a competitor, . . . financial institutions, or her current employer, where she lists herself as a cybersecurity compliance person, which has a nexus to the workspace of [TST], the damage or harm is difficult to ascertain."

The court ultimately found Wife liable for conversion and awarded TST a permanent injunction, $1 in compensatory damages, and $25,000 in punitive damages.[3] In

---

[3] The court found that, although TST had proved the information wrongfully converted by Wife had value, it had failed to establish the fair market value, or provide any valuation of that information. The punitive damages award represented TST's costs

(continued)

6

the court's view, the evidence was "clear and convincing" that Wife had "purposefully" deprived TST of its intellectual and confidential property, which constituted "an unlawful act, intentionally or wantonly, without legal justification or excuse, but with an evil or rancorous motive influence[d] by hate, the purpose being to deliberately and willfully injure [TST]."

### *Discovery Proceedings: Wife & Husband v. TST*

We now return to the divorce case. As part of the additional discovery phase, Wife sought discovery of TST's corporate documents from Husband so that her expert could conduct a valuation of the company. As relevant here, on July 26, 2022, Wife's counsel sent Husband's counsel a letter detailing 11 categories of documents requested in discovery that had not been produced. Ten of these categories sought documents from or related to TST.[4] Husband shared that letter with the company.

On August 12, 2022, TST sent counsel for both Wife and Husband a letter informing

---

incurred in pursuit of the preliminary injunction, the petition for contempt, the show cause, and sanctions.

[4] Those categories were:

1. Husband's complete 2021 tax returns, both personal and for TST;
2. All stock certificates for TST;
3. Copies of all profit and loss statements for TST;
4. Copies of employment agreements, performance-based compensation plans, and noncompete agreements for TST;
5. Records of any and all monies of benefits disbursed by TST to Husband or for his benefit, including his salary, draw, or earned income;
6. Any and all financial statements, without regard to whether said financial statements are with or without audit;

(continued)

7

them that, although Husband co-founded TST, he was "neither a board member nor an officer of the company and thus [was] not entitled to demand all of the information that" Wife sought. While neither party had yet served TST with a subpoena, the company suggested it was "willing to provide certain Confidential Information to [Husband], so that he might respond to discovery, but only after the [circuit court] enter[ed] an appropriate protective order." TST sent the parties a draft stipulated protective order, but Wife, at first, refused to sign. Instead, on the same day TST sent its letter, Wife's counsel sent Husband's counsel another letter demanding even more documents from him—now 37 categories of documents—all but one of which sought documents from or related to TST.[5] The letter

---

7. Any and all statements of income or retained earnings, with or without audit, of TST;
8. Any and all retirement, profit-sharing and/or pension plans (including amendments thereto and statements regarding accumulated benefits) maintained by TST in which TST is a participant;
9. All documents that reflect the current accounts receivable of TST; and
10. All other documents indicating Husband's interest in TST and the present value of the same.

[5] These categories, without repeating the requests in the prior letter, were:

1. Year-to-date financial statements for the current fiscal year or most recent month reconciled and available;
2. Detailed general ledger for the period July 2018 to present;
3. Aged accounts receivable and payable listings for the last fiscal year-end (December 31, 2021) and as of present;
4. Contract backlog for each year-end 2018-2021 & as of June 30, 2022;
5. Contract activity for each year-end 2018-2021 & as of June 30, 2022, including (a) a list of active clients; (b) contract percentages by area of business; (c) sole-sourced and competitive prime contracts or subcontracts; (d) percentages of revenue from federal government and non-federal government sources; & (e) revenue by contract type;
6. Current business plan—including budget forecasts or projections;

(continued)

8

demanded confidential and highly sensitive information, including, all of TST's compensation and retirement plans, general ledgers and payroll summaries, details about contracts with active clients, and TST's business plans and projections. Consequently, on August 23, 2022, TST moved for a protective order under Maryland Rule 2-403(a).

7. Schedule of officers' and directors' and owners' compensation for the years ended December 31, 2018, through December 31, 2021 & for six months ended June 30, 2022;
8. Master year-end payroll summaries or copies of all W-2's & 1099's issued for each year 2018-2021;
9. Master payroll summary 2022;
10. Copies of significant leases & loans, including notes receivable & payable;
11. Stockholder list showing the amount or percentages owed [sic] by each person;
12. Copies of all stock option or stock sale agreements;
13. Copy of all buy/sell, shareholder, management, or other restrictive agreements in effect;
14. Details of transactions in stock over the last 5 years;
15. Copies of any offers to acquire company assets or stock or any other documents affecting ownership rights of interest being valued within the last 3 years;
16. Updated deferred compensation agreement, if any;
17. A current organizational chart including a description of all significant changes during the last 5 years;
18. Lists of patents, copyrights, trademarks, or similar intangibles;
19. Copies of employment contracts for key officers & managers;
20. Any legal documents related to any contingent assets & liabilities, including pending or threatened litigation for the last 2 years;
21. Previous business valuation reports;
22. Listing any significant contracts, including (a) covenants not to compete; (b) customer or supplier contracts; (c) labor contracts; & (d) any other similar contracts;
23. Details of financial transaction with owners or other related parties;
24. Reports or examinations issued by governmental agencies;
25. Details of certification for small business, minority, or similar qualification status for federal or state contracting purposes; and
26. Any other information not listed above that may affect the value of the business.

9

On September 1, Wife served a subpoena upon TST demanding the company produce the same 37 categories of documents within 28 days. TST moved to quash and for a protective order.[6] The court set a hearing on TST's motions for January 27, 2023, causing the trial, which was originally scheduled for September 28 and 29, to be continued.

While TST's motions were pending, on December 16, 2022, Wife served the company with a new subpoena seeking to depose its resident agent and for production of now 41 categories of documents mostly related to the company's finances.[7] TST filed a Notice of Objection under Maryland Rule 2-510(f) on December 27 and produced responsive documents to the non-objectionable requests. Most of TST's written objections alleged that the requests were either overly broad or that the documents were "unnecessary for an appraisal or valuation of the company."

Then, on January 26, 2023, just before the hearing on TST's motions, the parties signed the Stipulated Protective Order ("Protective Order"), and it was entered on February

---

[6] TST's primary argument in this motion was that the subpoena requested the documents be produced for trial and could not reasonably be used for that purpose because it was impossible for an expert to conduct a valuation on the spot. Its secondary arguments are consistent with those raised in later motions and on appeal—*i.e.*, relevance and overbreadth.

[7] Most of the requests were variations of those in the prior subpoena updated to cover 2022 through February 2, 2023, the date of deposition. The categories unique to this subpoena were:
1. All estimated tax vouchers for TST for 2022 through date of deposition;
2. All documents evidencing the rate charged for Husband's work in any and all proposals by TST and contracts awarded to TST;
3. Valuation and all appraisals performed in relation to TST for any portion of TST; and
4. Payroll form W-3 (Transmittal of Wage and Tax Statements) for 2018 to present.

6. The Protective Order was drafted solely by TST and, among other things, forbade Wife from viewing any of the documents produced, limiting their distribution mainly to the parties' counsel and experts under what is commonly referred to as an "Attorneys' Eyes Only" provision.[8]

After the deposition of TST's resident agent, Husband's and Wife's experts conferred and created a list of 37 categories of documents—pared down from the 41 covered by the most recent subpoena—they still needed from TST that they agreed were still necessary to adequately value the company.[9] The company produced additional documents in response, labeling almost every page confidential and for attorneys' and experts' eyes only in accordance with the Protective Order—but did not produce everything requested.

On February 17, 2023, Wife moved to compel TST's production of the remaining documents she had requested. Husband "consent[ed] and join[ed]" Wife's motion—with minor factual disputes—soon after. Wife also moved to shorten TST's time to respond. The court granted the motion to shorten time, but failed to serve the court's order on TST. When TST failed to respond to the Motion to Compel by the new, shortened deadline of March 2, the court granted the motion to compel and entered an order the next day.

---

[8] Specific provisions are quoted and discussed below as relevant.

[9] Two of these categories were not covered by the Schedule A attached to the most recent subpoena, but they were referenced as topics TST's corporate designee was notified to testify about. They were:
1. List of all contracts currently under bid and likelihood of winning; and
2. Historical win/loss ratio of contracts bid upon.

11

On March 6, TST simultaneously noted an appeal from the court's order compelling discovery[10] and opposed Wife's motion to shorten time to respond. TST attached as an exhibit to its opposition an Expert Declaration stating that the parties' list of agreed documents "include[d] documents that are not necessary for a valuation of TST [and that it] more closely resembles a list of documents that would be needed for an audit or forensic examination, as opposed to a valuation, of a company." Then, on March 13, Wife filed a 10-day Motion to Alter or Amend the court's compulsion order to reflect consideration of TST's opposition. Wife also attached as an exhibit to her motion an Expert Declaration stating that the requested documents were, in fact, necessary for a valuation of TST and that TST's expert lacked the credentials to make that determination. Attached to the Declaration was a redlined copy of the "List of Agreed Documents" detailing what documents, if any, TST had produced. Husband "consent[ed]" to Wife's motion the day it was filed.

The court held a hearing on the two motions on June 22, 2023, which was functionally a hearing on Wife's original Motion to Compel. The court summarized TST's objections as: (1) "a relevance objection"; (2) "that the requests were overly broad"; (3) "a concern of undue burden"; and (4) "confidentiality concerns." In discussing the first two objections, the court opined:

> [A] third party doesn't really, in my estimation, have standing to argue about relevance and overbreadth. Because you don't have a dog in the fight, okay? So if you get served with a subpoena to request information, it just seems to

[10] TST also filed a "motion to stay judgment of compulsion against non-party pending appeal" on March 10, 2023. The circuit court denied this motion by order entered June 27, 2023.

me that a relevance objection from a non-party doesn't really have much merit.

On the other hand, undue burden does have merit. You have to . . . do more than just say oh, it's unduly burdensome. You have to come forward with some facts.

TST argued that "[w]hether a burden is undue dovetails with the relevance inquiry."

The court, however, was unpersuaded:

I understand what you're saying is part of it is the relevance, but it's not really, because the question is whether it's unduly burdensome to you, and whether or not the information is relevant or not, in my estimation, doesn't, you know, factor into that analysis. Because it could be highly relevant, but it could be unduly burdensome to you because you're a non-party. And for the reasons why relevance isn't all that important, I think then it makes the undue burden argument even greater, because you're just a third party, not a party to the litigation. But you'd have to show what's the nature of that burden.

The court further reasoned that TST's "substantive interests [were] protected by the [P]rotective [O]rder. And the extent to which someone disobeys that [P]rotective [O]rder[,] there are contempt proceed[ings] . . . . So, [TST had] all the protections that anybody in [the company's] situation c[ould] have." Although the court briefly considered TST's expert's opinion that some requested documents were not necessary for a valuation of the company, it ultimately credited Husband and Wife's experts' opinions instead. The court concluded: "If the two experts say they need this information to value the company, then I'm going to defer to what the two experts say that they need to value the company."

On June 27, 2023, the court entered an order granting Wife's Motion to Amend, vacating the court's March 3 order, regranting Wife's Motion to Compel, and denying TST's request for a stay of the compulsion pending appeal. TST filed a second Notice of

13

Appeal on July 11, 2023.[11] TST then sought a stay pending appeal from this Court, which was denied on July 18.[12] That same day, TST produced the remaining documents requested under the subpoena subject to the Protective Order.

### *Contempt Proceedings: TST v. Husband & Wife*

Less than a month later, on August 4, 2023, TST petitioned for contempt against Husband, Wife, and their counsel for alleged violations of the Protective Order. Husband and Wife moved separately to strike TST's petition under Maryland Rule 2-322(e)— Husband on August 9; Wife on August 17. Their motions contended that TST's petition was improper because the company was not a "party to [the] action" within the meaning of Rule 15-206(b)(2), and so the company could not initiate contempt proceedings. The court granted Husband's motion on September 18, 2023, without a hearing or explanation. TST filed a third notice of appeal on September 22, 2023.[13]

---

[11] This is the operative notice of appeal for Case No. 38, September Term, 2023.

[12] TST also filed a "motion regarding stay of judgment of compulsion pending appeal" in the circuit court on July 14, 2023. The circuit court denied this motion by order entered August 7, 2023.

[13] This appeal was docketed as No. 1437, September Term, 2023. We granted TST's motion to consolidate the two appeals on October 20, 2023.

## DISCUSSION

## I.

## Discovery

### A. TST's Contentions[14]

TST petitions this Court to reverse the circuit court's order compelling its production of "highly confidential documents in response to [41] demands in a [s]ubpeona[.]" TST posits "[t]hird parties to civil litigation in the courts of this State should have legal standing to object that demands for their documents are disproportionate to the needs of the underlying suit, overbroad, and/or irrelevant to the claims." According to TST, the trial judge "seemed surprised that Husband and Wife demanded Company's government contracts for purposes of valuing the company for the divorce, but failed to do any independent inquiry. [] Instead, the court simply accepted the parties' claims that they need the information, while refusing to consider the opinions of Company's expert."

A protective order, TST argues, is an inadequate substitute for examining whether the subpoenaed documents are necessary and relevant because "protective orders do not offer foolproof protection of the confidentiality interests at stake"; and, citing federal cases, TST urges "that an even stronger showing of need is warranted when confidentiality interests are at stake." TST contends that, not only does a nonparty have standing to object to relevance and overbreadth, but that we should adopt—in line with the federal courts—a heightened standard to overcome those objections when they are lodged by a nonparty.

---

[14] Neither Husband nor Wife have filed an opposing brief on appeal to this Court.

15

## B. Justiciability

A nonparty seeking to "challeng[e] a trial court discovery or similar order" may appeal directly from the adverse order compelling production "because, analytically, it is a final judgment with respect to that appellant." *St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 90 (2006) (citations omitted). The nonparty is not required to wait until they are held to be in contempt of court in order to initiate the appeal. *Id.* at 88-89 ("St. Joseph is not a party to the unfair competition case[.] . . . Maryland law does not require a person or entity in St. Joseph's position to refuse compliance with the court's [discovery] order, and be held in contempt, in order to challenge on appeal the adverse order.").

We acknowledge, as an initial matter, that the instant appeal from the order to compel production is arguably moot because TST complied with the order and it is now impossible to relieve TST of its obligation to comply with the compulsion order. The test for mootness, however, is whether a court can fashion *any* effective remedy to the controversy between the parties; it need not return the parties to the *status quo ante*. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992); *Tempel v. Murphy*, 202 Md. App. 1, 16 (2011). Therefore, we must also recognize that TST has a possessory interest in its confidential documents and that the parties are (allegedly) still in possession of them. *See Bond v. Slavin*, 157 Md. App. 340, 360 (2004) ("When documents that should be presented to the court on a particular date have been presented in advance of that date to the party who issued the subpoena, the fact that harm resulting from the premature production *may* be irreversible does not render the court powerless to fashion

16

some form of meaningful relief." (citing *Church of Scientology*, 506 U.S. at 12-13)); *St. Joseph Med. Ctr.*, 392 Md. at 101-03 (ordering remand for trial court to determine whether an exception to the medical review committee privilege applied to documents that had fallen into the hands of the parties to the suit and to "resolve the discovery dispute"). However, as we explain in our analysis below, because the terms of the Protective Order require the return or destruction of all "Protected Material" following the "final disposition" of this case—including this appeal—TST already has a more effective remedy under the Protective Order.

Accordingly, although we conclude that the appeal is moot, under the circumstances of this case, we will exercise our discretion to reach the merits of TST's appeal, which is "capable of repetition, yet evading review." *See, e.g.*, *Powell v. Md. Dep't of Health*, 455 Md. 520, 541 (2017) (quotation omitted). As explained by the Supreme Court of Maryland in *Powell*:

> This exception applies when "(1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." [*State v. Parker*, 334 Md. 576, 585-86 (1994)]. Even if it is unlikely that the same party will be subject to the same action, the exception may also apply if the issue is of public importance and affects an identifiable group for whom the complaining party is an appropriate surrogate (even if a class action is not certified). *See La Valle v. La Valle*, 432 Md. 343, 351-52, (2013)[.]

*Id.* In a Medicaid fraud case decided more than 30 years earlier, *In re Special Investigation No. 244*, 296 Md. 80 (1983) [hereinafter "*No. 244*"], the appellants appealed the circuit court's denial of their motion to quash a grand jury subpoena and the Supreme Court of Maryland granted cert before the case was heard by this Court. *No. 244*, 296 Md. at 82.

17

The Court reached the merits of the issues presented even though the case was clearly moot, explaining that:

> The term of the grand jury has long since expired. No effort was made to enforce the subpoena pending the appeal. No effort was made to have the grand jury continued beyond its term. No similar subpoena has been issued by a subsequent grand jury. It follows, therefore, that there is now no one to whom the subpoena is returnable and the subpoena must be quashed. **However, because there is likely to be a recurrence of the issues here presented and upon the recurrence the same difficulty which prevented the issues from being heard in time is likely to again prevent a resolution, we shall address the issues presented**.

*Id.* at 82-83 (emphasis added) (citations omitted). As in *No. 244*, it is likely that the civil dispute underlying a nonparty's challenge to a discovery subpoena will frequently conclude, settle, or otherwise resolve before the matter can be heard by this Court. *See In re S.F.*, 477 Md. 296, 321 (2022) ("We reject the State's argument that 'there is no reason to believe that this issue will continue to evade review[]' because juveniles can be on probation for years. While it is true that some juvenile conditions of probation may last for years, there are countless others, including the case at bar, which are terminated before the case reaches this Court." (alteration in original)).

In *Coburn v. Coburn* the Maryland Supreme Court granted cert in a domestic violence case "to consider whether a trial judge may admit evidence of alleged prior abuse in a protective order hearing under the domestic violence statute." 342 Md. 244, 249 (1996). The Court determined that the case was clearly "moot because the final protective order at issue [had] expired" but the Court "exercise[d its] discretion to decide the issue raised . . . because it is likely to recur frequently but will escape judicial review . . . due to the limited duration of protection orders." *Id.* at 250 (citation omitted). Implicitly, the

18

Court considered the fact that the issue presented in *Coburn* could arise, and evade review, in subsequent cases that did not involve the same parties; while Ms. Coburn and Mr. Coburn might again be parties to a subsequent protective order proceeding, it is unlikely that such an occurrence would happen "frequently[.]" *See id.* The Court further determined that there was "adequate justification in . . . review[ing] the merits" because "the issue involves construction of a statute routinely applied by courts of this state, and our interpretation of it will assist judges in determining whether victims of abuse are in need of protection." *Id.* (citing *State v. Peterson*, 315 Md. 73, 85 (1989)).

Analogously, the Rules delineating the scope of discovery are routinely applied by our courts, and our interpretation of them will assist judges to determine whether, as in this case, discovery of companies' confidential information is permissible. Therefore, we find that this case raises an issue of "public importance[,]" *Powell*, 455 Md. at 541, in that it will clarify the guardrails, as imbued within the Maryland Rules, that may prevent parties to a civil action from using civil discovery to improperly obtain companies' confidential information. *See Bond*, 157 Md. App. at 354 ("The circumstances under which and procedures by which confidential financial information can be protected from unauthorized disclosure are issues of important public concern." (cleaned up)). Certainly, TST is "an appropriate surrogate" for other Maryland businesses that have been served with subpoenas for confidential information that may be overbroad or seek information that is not relevant

under Maryland Rule 2-402. *See Powell*, 455 Md. at 541.[15]

## C. Discovery from Nonparties

### The Maryland Rules

In Maryland, the scope of discovery is delineated in Rule 2-402. Generally, "[a] party may obtain discovery regarding any matter that is not privileged . . . **if the matter sought is relevant** to the subject matter involved in the action, whether it relates to the claim or defense of the party seeking discovery or . . . of any other party." Md. Rule 2-402(a) (emphasis added).[16] The court:

> shall limit the frequency or extent of use of the discovery methods otherwise permitted . . . if it determines that . . . the burden or cost of the proposed discovery outweighs its likely benefit, taking into account the complexity of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed

---

[15] We have determined to dismiss the appeal in Case No. 0038 rather than reverse the trial court's judgment because final judgment has been entered in the underlying divorce case, and because, as explained in *Cottman v. State*, we generally dismiss appeals in which we reach moot questions "when such discussions [a]re important to the case at issue or future cases[.]" 395 Md. 729, 745 (2006); *see also Sanchez v. Potomac Abatement, Inc.*, 198 Md. App. 436, 444 and n.5 (2011) (explaining that the so-called "'public interest' offshoot to the mootness doctrine" "does not prevent dismissal of the appeal on mootness grounds" (citing *Cottman*, 395 Md. at 745)). We note, however, that a number of other cases do not dismiss the appeals under similar circumstances. *See, e.g.*, *In re S.F.*, 477 Md. at 335 (affirming the judgment of the Appellate Court of Maryland addressing no-suspension conditions of probation); *No. 244*, 296 Md. at 97 (remanding and instructing the circuit court to quash the grand jury subpoena).

[16] The term "relevant" has a slightly different meaning during the discovery and trial phases of litigation. *See, e.g.*, *Cole v. State*, 378 Md. 42, 61 (2003) ("The issue at trial is admissibility of offered evidence, while the issue in pre-trial stages is whether a party may obtain information or documents through discovery."). Nonetheless, in either stage of the case, it remains paramount that information be *relevant* to the proceedings. Thus, just as Rule 2-402 requires information to be relevant to be discoverable, Rule 5-402 requires that information be relevant to be admissible. Md. Rule 5-402 ("Evidence that is not relevant is not admissible.").

20

discovery in resolving the issues.

Md. Rule 2-402(b)(1).

In the course of discovery, a party may seek the production of documents from other parties as well as from nonparties. *See* Md. Rules 2-412 & 2-422. Maryland Rule 2-422, which governs requests for documents and other materials from other parties, expressly reiterates that a request must be "within the scope of Rule 2-402(a)[.]" Md. Rule 2-422(a). If the party to whom the request is directed refuses to fulfill the request, the issuing party may move for an order to compel discovery. Md. Rule 2-432(b)(1)(E).

A subpoena is required to compel a nonparty to "attend, give testimony, and produce" designated documents, electronically stored information, or tangible things at a deposition. Md. Rule 2-510(a)(1)(B); *see also* Md. Rule 2-412(c) ("A nonparty deponent may be required to produce documents or other tangible things at the taking of [a] deposition by a subpoena."). Implicitly—as with *all* discovery—a request that a nonparty produce documents or other tangible things is necessarily confined by the bounds of Rule 2-402(a). Thus, "[a] person served with a subpoena to attend a deposition may seek a protective order pursuant to Rule 2-403." Md. Rule 2-510(f). If the subpoena also commands the production of documents, the person to whom the subpoena is directed may either seek a Rule 2-403 protective order or file, within ten days after service of the subpoena, a written objection stating the reasons for the objection. Md. Rule 2-510(f). "If an objection is filed, the party serving the subpoena is not entitled to production of the materials except pursuant to an order of the court from which the subpoena was issued[,]" which requires "the party serving the subpoena [to] move for an order to compel the

21

production." Md. Rule 2-510(f). If the person to whom the subpoena was directed elects, instead, to seek a protective order, "the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that discovery not be had[.]" Md. Rule 2-403(a).

Our Supreme Court has, on numerous occasions, explained that we interpret a Maryland Rule using the same canons of construction used to interpret statutes:

> First, the court considers the Rule's plain language in light of: (1) the scheme to which the Rule belongs; (2) the purpose, aim, or policy of this Court in adopting the Rule; and (3) the presumption that this Court intends the Rules and this Court's precedent to operate together as a consistent and harmonious body of law. If the Rule's plain language is unambiguous and clearly consistent with the Rule's apparent purpose, the court applies the Rule's plain language. Generally, if the Rule's plain language is ambiguous or not clearly consistent with the Rule's apparent purpose, the court searches for rulemaking intent in other indicia, including the history of the Rule or other relevant sources intrinsic and extrinsic to the rulemaking process, in light of: (1) the structure of the Rule; (2) how the Rule relates to other laws; (3) the Rule's general purpose; and (4) the relative rationality and legal effect of various competing constructions.

*Green v. State*, 456 Md. 97, 125 (2017) (quoting *Fuster v. State*, 437 Md. 653, 664-65 (2014)).

We conclude that the ability of a person (including a nonparty) to object under Maryland Rule 2-510(f) encompasses that most basic objection that the discovery sought by the subpoena exceeds the bounds of Rule 2-402, which delineates the scope of discovery under the Maryland Rules, including that the discovery sought is not "relevant to the subject matter involved in the action[.]" As further explained in our analysis below, we consider this to be the most logical construction of Rule 2-510(f) in harmony with the

22

Maryland Rules governing discovery. Although no published opinion by a Maryland appellate court has squarely addressed this issue, federal courts have done so after construing the corresponding federal rules. We turn, then, to compare the relevant rules, procedures, and cases governing third-party subpoenas under federal law. *See Saint Luke Inst., Inc. v. Jones*, 471 Md. 312, 339 (2020) ("[W]hen interpreting a Maryland Rule that is similar to a Federal Rule of Civil Procedure this Court may look for guidance to federal decisions construing the corresponding federal rule[.]" (Second alteration in original)).

**The Federal Analogue**

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") work largely the same as the Maryland Rules. Under Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

A subpoena issued under Rule 45 is required to compel discovery from a nonparty. Fed. R. Civ. P. 45(c). The person to whom the subpoena is directed may then either serve on the issuing party a timely written objection—which can be overruled only by a court order granting a motion to compel—or move to quash or modify the subpoena. Fed. R.

23

Civ. P. 45(d)(2)(B) & (d)(3).  The court "must quash or modify a subpoena that . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).

The basic standards for civil discovery under the federal rules are functionally the same as those under the Maryland Rules: *First*, the matter sought must be relevant to a party's claim or defense.  *Compare* Fed. R. Civ. P. 26(b)(1), *with* Md. Rule 2-402(a).  *Second*, discovery must be proportional to the needs of the case and not impose an undue burden.  *Compare* Fed. R. Civ. P. 26(b)(1), *with* Md. Rule 2-402(b)(1).  Neither set of Rules expressly indicates that different *standards* govern discovery sought from a litigant versus discovery sought from a nonparty—only the *process* by which discovery is sought, or opposed, differs.  *Compare, e.g.*, Fed. R. Civ. P. 34, *with* Fed. R. Civ. P. 45; *and* Md. Rule 2-422, *with* Md. Rule 2-510.

Federal cases not only recognize that a third party has standing to challenge the scope of a subpoena, but generally hold that, "[w]hen discovery [in federal civil cases] is sought from nonparties, [] its scope must be limited even more."  *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).  Thus, for example, where a nonparty files a timely motion under Fed. R. Civ. P. 45(d)(3)(A)(iv) on the ground that the subpoena imposes an "undue burden[,]" the federal courts apply "[a] more demanding variant of the proportionality analysis . . . when determining whether . . . [the] subpoena . . . must be quashed or modified."  *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).  "[T]he ultimate question [remains] whether the benefits of discovery to the requesting party outweigh the burdens on the recipient."  *Id.*  Federal courts "give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing

24

discovery generally." *Id.* (quoting *In re Pub. Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)).

The Fourth Circuit has summarized a non-exhaustive list of some of the more important considerations that inform an analysis of whether a subpoena subjects a nonparty to an undue burden within the meaning of Fed. R. Civ. P. 45(d)(3)(iv):

> On the benefit side of the ledger, courts should consider not just the relevance of information sought, but the requesting party's need for it. The information sought must likely (not just theoretically) have marginal benefit in litigating important issues. (We mean "marginal" in the economic sense that the information must offer some value over and above what the requesting party already has, not in the sense that a mere *de minimis* benefit will suffice.) Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.

> On the burden side, district courts should of course consider the dollars-and-cents costs associated with a large and demanding document production. But there are other cognizable burdens as well. For example, a subpoena may impose a burden by invading privacy or confidentiality interests. Courts may consider the interests of the recipient of the subpoena, as well as others who might be affected. The text of Rule 45 makes that clear, encompassing burdens on any "person," not just the recipient of the subpoena. For example, if a subpoena seeks information from a business about its customers, it may implicate the business's interest in protecting competitively sensitive information, as well as the customers' interest in protecting their privacy. Another type of burden arises when a subpoena is overbroad—that is, when it seeks information beyond what the requesting party reasonably requires. A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it.

*Id.* at 189-90 (internal citations and footnotes omitted).[17]

Finally, we note that under the federal rules, it is incumbent on the party who seeks to compel compliance with a subpoena under Fed. R. Civ. P. 45(d)(2)(B) to demonstrate that the production sought by the subpoena is relevant to the proceedings. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). As explained by the U.S. District Court for the District of Arizona:

> Rule 34(c) of the Federal Rules of Civil Procedure grants parties the ability to seek the production of relevant, non-privileged documents from non-parties through a subpoena issued in accordance with Rule 45 of the Federal Rules of Civil Procedure. Under Rule 45(d)(2)(B)(i), if the recipient of such a subpoena refuses to produce requested documents, the proponent may move for an order compelling production. "To obtain such an order, the proponent must first show that . . . the requested material . . . [is] discoverable." *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 667 (D. Ariz. 2016). "If the proponent makes this showing, the burden shifts to the recipient to establish that the requested discovery should be denied." *Id.*
>
> **"[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules." Fed. R. Civ. P. 45, advisory committee notes on the 1970 amendments**. . . .
>
> \* \* \*
>
> Rule 26(b)(1) also requires that discovery be proportional to the needs of the

---

[17] The Fifth Circuit uses a similar list:

> To determine whether the subpoena presents an undue burden, we consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad.

*Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (footnotes omitted).

case. *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)[.] . . . "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, advisory committee notes on the 2015 amendments. In other words, Rule 26 "does not place the burden of proving proportionality on the party seeking discovery." *In re Bard IVC Filters*, 317 F.R.D. at 564.

*Mi Familia Vota*, 343 F.R.D. at 80-81 (bold emphasis added). *See also id.* at 81 (noting that under the federal rules "non-parties are entitled to special consideration when it comes to subpoena requests under Rule 45" (citations omitted)).

### D. Analysis

TST contends that we should adopt the federal courts' elevated standard for nonparty discovery. It argues that the trial court erred by failing to conduct an "independent inquiry" into whether Husband and Wife's experts needed the information requested. We agree and hold that the circuit court failed to apply the correct standard under Maryland law. We do not address whether Maryland should adopt an elevated standard for nonparty discovery.

As noted above, objections to discovery subpoenas directed at nonparties are governed by Rule 2-510(f). When interpreting the Maryland Rules, we follow the same principles as when construing statutes. *Zetty v. Piatt*, 365 Md. 141, 151 (2001). The first step of this analysis always begins with the plain text. *Id.* at 152. The text of Rule 2-510(f) does not limit the grounds for objecting to production. "If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text

of the rule." *Id.* (quoting *Johnson v. State*, 360 Md. 250, 265 (2000)).  Thus, a nonparty has access to the same arsenal of objections to a subpoena as would a party.

Under Rule 2-402(a), "[a] party may obtain discovery regarding any matter that is not privileged [only] if the matter sought is *relevant* to the subject matter involved in the action[.]"  (Emphasis added).  Relevance, therefore, is a proper objection to a discovery request.  *See Cole v. State*, 378 Md. 42, 62 (2003) ("[I]rrelevant matters clearly are not discoverable.").[18]  Similarly, Rule 2-402(b)(1) requires the court to limit discovery if "the burden or cost . . . outweighs its likely benefit," that is, if the request is disproportionate to the needs of the case—*i.e.*, overbroad.  Again, nothing in the Maryland Rules suggests a different standard applies to discovery sought from a nonparty—let alone a *lower* standard. Logically, then, TST had standing to object to Wife's subpoena on relevance and overbreadth grounds, and the court erred in refusing to consider TST's objections.

This conclusion finds support in federal cases.  Maryland Rule 2-510(f) largely derives from Federal Rule 45(d), so the interpretation federal courts have lent to that Rule is instructive.[19]  The federal rules forbid nonparty subpoenas that cause an "undue burden."

---

[18] Although *Cole* concerned discovery in a criminal case, this quote appears during the Court's discussion of the term "relevance" within the meaning of Rule 2-402(a). Indeed, the Court observed that "[w]hen relevance is at issue in criminal discovery disputes, the standard is the same as for civil actions[.]"  *Cole*, 378 Md. at 62-63.

[19] "As the Maryland discovery rules are closely patterned after the Federal discovery rules, it is appropriate to look to those rules for guidance in interpreting the Maryland rules."  *Gonzales v. Boas*, 162 Md. App. 344, 359 n.11 (2005) (citing *Bartell v. Bartell*, 278 Md. 12, 18 (1976)).  The Supreme Court of Maryland explained:

(continued)

Fed. R. Civ. P. 45(d)(3)(A)(iv). When reviewing whether a nonparty subpoena causes an undue burden, federal courts first analyze the request for relevance. *See Jordan*, 921 F.3d at 188 ("All civil discovery, whether from parties or nonparties, is limited in scope by Rule 26(b)(1)[.]"). Subsequently, both relevance and overbreadth are factors in the court's consideration of whether the discovery that is sought imposes an undue burden. *See id.* at 189-90; *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Because the person or entity opposing the subpoena under Fed. R. Civ. P. 45(d)(3)(iv) has the burden of demonstrating that compliance would create an undue burden, they must have standing to object based on relevance and overbreadth. *See Jordan*, 921 F.3d at 188-90; *Wiwa*, 392 F.3d at 818. Maryland likewise places the burden of "substantiating non-discoverability [on] the party to whom the discovery request is directed[.]" *Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru, Inc.*, 195 Md. App. 583, 598 (2010) (citation omitted). It follows, therefore, that the person to whom a subpoena is directed (whether a party or nonparty) has standing to object based on relevance and overbreadth in our courts as well.

We are not holding, at this time, that the circuit court was required to give TST's nonparty status special weight in considering its objections to Wife's subpoena. Rather,

---

Although there is little Maryland case law providing guidance to trial courts on protective orders in connection with civil discovery matters, we note that Maryland Rule 2-403(a) is based in large part on Federal Rule of Civil Procedure 26(c). We agree with our colleagues on the [Appellate Court of Maryland] that "when interpreting a Maryland Rule that is similar to a Federal Rule of Civil Procedure this Court may look for guidance to federal decisions construing the corresponding federal rule[.]"

*Saint Luke Inst.*, 471 Md. at 339 (quoting *Tanis v. Crocker*, 110 Md. App. 559, 574 (1996)).

the court's error was in holding TST's nonparty status against it by applying a lower standard and limiting the company's ability to defend its interests. At the very least, TST's objections should have been given the same weight as if they were a party to the action.

Here, the trial court did not explain why the parties' experts were more reliable than TST's expert regarding the confidential information that was required to value Husband's shares of stock in TST. Husband and Wife, who had been completely unable to agree on almost anything through years of highly combative litigation, were suddenly in lockstep regarding the necessity of obtaining TST's confidential documents after they began working with companies that rival TST in a highly competitive field. This unusual posture of the parties underscores why it was necessary to determine whether the documents requested were at all relevant to the litigation before compelling production of TST's highly confidential information. Although the Protective Order had already been signed, TST had expressed significant concerns that Wife would not comply with the Protective Order in light of her past flagrant disregard for court orders. To be sure, some—and perhaps, even most—of the 41 categories of documents may have been relevant to valuing Husband's shares in TST for purposes of Wife's equitable distribution claim. But certainly, parties cannot use family law divorce cases as a method of obtaining confidential documents from a nonparty without the court giving the nonparty's interests due consideration.

In short, whether discovery from nonparties is subject to a higher standard than discovery between parties is a question for another day, but it certainly is not subject to a

lower one. The circuit court here erred in compelling TST's production without considering whether the requests were relevant or overly broad.

The confidentiality provisions of the Protective Order "remain in effect" "[e]ven after final disposition of this litigation . . . until a Designating Party agrees otherwise in writing or a court order otherwise directs." Therefore, once this appeal is dismissed, under the express terms of the Protective Order,[20] both Husband and Wife will be required, within 60 days after "final disposition" of this case—namely this appeal—to return or destroy the "Protected Material,"[21] which would largely encompass any subset[22] that the court, on

---

[20] Specifically, by operation of Section 14 of the Protective Order, within 60 days after "final disposition of this action, as defined in Section 4," each "Receiving Party" must return or destroy all "Protected Material." Section 4, in turn, states:

> Even after final disposition of this litigation, the confidentiality provisions imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of: (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

As a consent order, it "is a valid contract between the parties that is judicially enforceable." *Knott v. Knott*, 146 Md. App. 232, 258 (2002) (citation omitted).

[21] Section 2.11 of the Protective Order defines "Protected Material" as "[a]ny Disclosure or Discovery Material that is designated as 'CONFIDENTIAL.'" In turn, Section 14 of the Order states that: "[a]s used in this subdivision, 'all Protected Material' includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material."

[22] Although TST has represented that almost all documents produced were marked confidential, it is possible that some of the few documents not so marked could also be documents that would have fallen outside the scope of relevant documents. We see no

(continued)

31

remand, might deem not relevant or otherwise outside the bounds of the scope of discovery as delineated in Maryland Rule 2-402.

## II.

## Contempt

### A. TST's Contentions

Independent of the circuit court's error in compelling TST's document production, the company contends that the court erred in striking the petition for contempt it filed after learning that Husband, Wife, and their counsel had allegedly breached the Protective Order. The sole ground Husband raised for striking TST's petition was that they were not a "party to [the] action" within the meaning of Rule 15-206.[23] In the alternative, TST contends that Husband should have been judicially estopped from arguing that the company could not petition for contempt.

### B. Right to Appeal

We do not reach the merits of TST's contentions because, as we explained in *Kadish v. Kadish*, 254 Md. App. 467 (2022), where the circuit court has *not* adjudged any person or entity in contempt of court, issues pertaining to a petition for contempt are not appealable:

> Generally, unless constitutionally authorized, "[t]he right to appeal in this State is wholly statutory." *Pack Shack, Inc.* [*v. Howard Cnty.*, 371 Md. 243, 247 (2002)]. Our "statutory scheme is structured to confer a broad, general

---

evidence in TST's filings that it is interested in pursuing costly litigation for the return of any documents that do not constitute Protected Material.

[23] Wife's later-filed motion raised an additional argument, but her motion was not ruled on by the circuit court, and so is not discussed here.

32

right of appeal, that subsequently is limited by enumerated 'exceptions.'" *Id.* at 249[.] The "general right of appeal," *id.*, is codified at Maryland Code (1973, 2020 Repl. Vol.), Courts & Judicial Proceedings Article ("CJP"), § 12-301, and provides:

> ***Except as provided in § 12-302 of this subtitle***, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

(Emphasis added). Section 12-302 clarifies that the general appeal right "does not apply to appeals in contempt cases, which are governed by § 12-304 of this subtitle[.]" CJP § 12-302(b). In turn, CJP § 12-304(a) states: "Any person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interlocutory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action."

In construing section 12-304, the [Supreme Court of Maryland] has explained that the statute "clearly and unambiguously limits the right to appeal in contempt cases to persons adjudged in contempt." *Pack Shack*, 371 Md. at 254[.] The statute establishes two prerequisites: section 12-304 requires the order or judgment to be passed, first, to "preserve the power and dignity of the court" and, second, "to have adjudged the person appealing in contempt of court." *Id.*

*Kadish*, 254 Md. App. at 508-09 (first and fourth alterations in original).

## Conclusion

For the reasons provided above, although appeal No. 0038 is moot, we exercise our discretion under Maryland Rule 8-602(c)(8) and hold that TST had standing to challenge the subpoena on grounds that some of the requests were overbroad and not relevant to the subject matter involved in the divorce action. Accordingly, the circuit court erred in its

33

judgment and order dated June 27, 2023, requiring that TST produce to Husband and Wife the "Responsive Documents" which were the subject of the motion to compel and the subpoena served on TST.

We do not reach the court's decision to strike the petition for contempt as that matter is not properly before this Court.

**APPEAL NOS. 1437 AND 0038 DISMISSED. COSTS TO BE PAID BY APPELLANT.**